No. 93,583

AARON E. LAYMON, *Appellant,* v. STATE OF KANSAS, *Appellee.*
(122 P.3d 326)

Opinion filed November 10, 2005.

*Robert A. Anderson,* of Robert A. Anderson Law Office, of Ellinwood, argued the cause and was on the brief for appellant.

D. *Christopher Oakley*, county attorney, argued the cause, and *Phill Kline*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This K.S.A. 2004 Supp. 60-1507 case requires us to determine the applicability of our holding in *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004), in a situation where a criminal defendant's lawyer failed to raise a *McAdam*-type argument on direct appeal to the Court of Appeals and thus failed to preserve it for this court to address on petition for review.

## Factual and Procedural Background

Movant Aaron Laymon pleaded guilty to one count of conspiracy to manufacture methamphetamine in violation of K.S.A. 65-4159 and K.S.A. 21-3302. A violation of K.S.A. 65-4159 is a drug severity level 1 felony. He was sentenced to 132 months in prison.

Laymon appealed his sentence to the Kansas Court of Appeals; his counsel from the Appellate Defender's office (ADO) filed Laymon's direct appeal brief on May 7, 2003. At least two lines of argument were available to Laymon's counsel at that point in time.

One line of argument was pursued in *State v. Luttig*, 30 Kan. App. 2d 1125, 54 P.3d 974, *rev. denied* 275 Kan. 967 (2002), and in *State v. Layton*, 31 Kan. App. 2d 350, 65 P.3d 551 (2003), *aff'd.* 276 Kan. 777, 80 P.3d 65 (2003). ADO lawyers had argued in each case that a defendant sentenced for manufacturing methamphetamine under the drug severity level 1 felony provision of K.S.A. 65-4159 was entitled to be sentenced instead under the misdemeanor provision in K.S.A. 65-4127c. The Court of Appeals ruled against the defense position in both cases—in *Luttig* on October 4, 2002, and in *Layton* on March 28, 2003—adopting the rationale that K.S.A. 61-4159 contained a specific penalty provision, which controlled over the general penalty provision of K.S.A. 65-4127c. See *Luttig*, 30 Kan. App. 2d at 1130-32; *Layton*, 31 Kan. App. 2d at 356.

The other line of argument had been pursued by an ADO lawyer in *McAdam*. In that case, the ADO lawyer argued on behalf of a defendant sentenced for manufacturing under the drug severity level 1 felony provision in K.S.A. 61-4159 that he should have been

sentenced instead under the drug severity level 3 felony provision of K.S.A. 65-4161. The Court of Appeals rejected this argument as well. See *State v. McAdam*, 31 Kan. App. 2d 436, 66 P.3d 252 (2003), *aff'd. in part, rev'd. in part* 277 Kan. 136, 83 P.3d 161 (2004).

When Laymon's ADO lawyer filed his direct appeal brief, this court had denied a petition for review in *Luttig*; however, a petition for review in *Layton* was awaiting decision by this court; and the time for filing such a petition in *McAdam* had not yet expired. In short, despite the icy reception that had been given both lines of argument by the Court of Appeals, this court had not yet finally rejected either.

Nevertheless, the sole line of argument pursued vigorously on Laymon's direct appeal was the *Luttig/Layton* argument. It was captioned: "The district court erred by imposing a felony penalty for the manufacturing of methamphetamine," and the brief asserted: "Because there are two separate penalty provisions applicable to a violation of K.S.A. 65-4159, a defendant can only be sentenced to the lesser—in this case, a misdemeanor sentence pursuant to K.S.A. 65-4127c. Because the felony sentence imposed in this case violates [*State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989)], it must be set aside and the matter remanded for imposition of a misdemeanor sentence for conspiracy to manufacture methamphetamine."

As for the *McAdam* line of argument—that Laymon should have been sentenced for compounding under the drug severity level 3 felony provision covering K.S.A. 65-4161 rather than for manufacturing under the drug severity level 1 felony provision covering K.S.A. 65-4159—the brief's only mention of it came in its last few substantive sentences, with no elaboration or explanation. It appears as meek handmaiden to the brief's central argument regarding misdemeanor sentencing under 65-4127c; it bears no separate heading or other emphasis, merely bringing up the rear of the brief's critique of a Court of Appeals version of *Layton* that was later modified:

"Far from clarifying the controversy, [the Court of Appeals] actually compounds the difficulty of determining how to classify the offense of manufacturing meth-

amphetamine. K.S.A. 65-4159 and K.S.A. 65-4161 describe similar offenses, but propose different penalties. K.S.A. 65-4159, notwithstanding the provisions of K.S.A. 65-4127c, purports to define a severity level 1 drug felony. K.S.A. 65-4161 is a severity level 3 drug felony for first time offenders.

"The question then becomes which of these two is the applicable statute. If K.S.A. 65-4159 is, then the conflict with K.S.A. 65-4127c remains. Mr. Laymon should be sentenced for the class C misdemeanor of conspiring to commit a misdemeanor. If K.S.A. 65-4161 is, then Mr. Layton, who has no prior drug convictions, should be sentenced for the severity level 3 drug felony."

This court granted petitions for review in *Layton* and *McAdam* on July 9, 2003. The Court of Appeals heard argument in Laymon's direct appeal on August 27, 2003, which was before this court heard argument in either *Layton* or *McAdam*. Given the fact that *Layton* and *McAdam* had been accepted for review, Laymon's ADO lawyer would or should have been aware that this court would be addressing both of the lines of argument that had been available to his client on direct appeal of his sentence. Because there is no stenographic or audio record kept of Court of Appeals arguments, however, we are not able to reconstruct whether the lawyer attempted to breathe life into his brief's fleeting allusion to a *McAdam*-type claim.

Not surprisingly, the Court of Appeals' decision in Laymon's case did not come down until after our decision in *Layton* was filed on December 12, 2003; this was 2 days after *McAdam* was argued before this court. In *Layton*, we rejected the argument that the defendant should have been sentenced under the misdemeanor provision of 65-4127c, accepting the Court of Appeals' reasoning that 65-4159 was not part of the Uniform Controlled Substances Act. *State v. Layton,* 276 Kan. 777, 782, 80 P.3d 65 (2003). It is also significant for this case that we commented in the *Layton* opinion on a belated defense attempt to pursue a *McAdam*-type argument:

"At oral argument before this court, in response to questions from the bench, counsel for appellant insisted that the issue of whether Layton should have been sentenced under K.S.A. 65-4161 was before this court. Counsel subsequently filed an additional authority letter . . . stating that if Layton is not subject to be sentenced for a misdemeanor under K.S.A. 65-4127c, he should be sentenced for a severity level 3 felony for violation of K.S.A. 65-4161. He argues the issue was

before the Court of Appeals based on Layton's motion to rehear or modify the Court of Appeals' opinion and the court's subsequent modification of its opinion. Counsel for appellant admits the Court of Appeals did not directly address that issue but argues that does not preclude this court from addressing whether 'Layton should have been sentenced under K.S.A. 65-4161.'

"We disagree.

"The issue that Layton has pursued to this court was stated in his brief in the Court of Appeals as whether the district court erred by imposing a felony penalty for the manufacturing of methamphetamine, and his argument was that there was a conflict between the misdemeanor penalty of 65-4127c and the felony penalty of 65-4159. Layton did not cite K.S.A. 65-4161 in his appellate brief in the Court of Appeals. . . . Contrary to Layton's assertion, the Court of Appeals did not find that he was 'properly sentenced to a [severity] level 1 penalty under K.S.A. 65-4161 because Layton had two prior convictions for similar offenses.'

"The Court of Appeals issued its first opinion in this case in December 2002. . . . [After a successful motion for reconsideration, in a] modified opinion, the Court of Appeals stated with regard to 65-4161: 'The fact that compounding a narcotic under K.S.A. 2001 Supp. 65-4161, a similar offense, is a felony under both that statute and K.S.A. 2001 Supp. 65-4127c simply reinforces our conclusion that a violation of 65-4159 was intended to be a felony.' [Citation omitted.]

"In his petition for review of the modified Court of Appeals' opinion, Layton phrased his issue as follows: 'The Court of Appeals erred by not remanding this case for the imposition of a misdemeanor penalty for the manufacturing of methamphetamine; in the alternative, the Court [of Appeals] erred in not remanding this case for re-sentencing . . . for a severity level 3 felony. . . .' With regard to the 'alternative' issue, Layton quoted the Court of Appeals' reference to 65-4161 being a similar offense to 65-4159. Layton argued that if the two statutes prohibit identical conduct but impose different penalties — 65-4161 is a severity level 3 felony for a first conviction and 65-4159 is a severity level 1 felony — he can be sentenced only under the lesser penalty. The State did not file a response to Layton's petition for review. Neither party filed a supplemental brief in this court.

"Rule 8.03(g)(1) (2003 Kan. Ct. R. Annot. 60) provides in part: 'The order granting review may limit the questions on review. If review is not limited, the issues before the Supreme Court include all issues properly before the Court of Appeals that the petition for review or cross-petition allege were decided erroneously by the Court of Appeals.' Here, the order granting review limited the question on review to Layton's sentence for violation of K.S.A. 65-4159. Although Layton stated as an 'alternative' issue in his petition for review that he should have been sentenced under 65-4161 rather than 65-4159, that issue was neither presented to the Court of Appeals nor decided by it. There is no Court of Appeals decision on this issue for the court to review in this case." *Layton*, 276 Kan. at 782-84.

The Court of Appeals' two-page decision in Laymon's direct appeal, filed January 9, 2004, quickly dispensed with the argument

that Laymon should have been sentenced under the misdemeanor provision of 65-4127c, rejecting it on the specific-versus-general ground of *Luttig* and on the ground that K.S.A. 65-4159 was not part of the Uniform Controlled Substances Act to which K.S.A. 65-4127c was intended to apply. See *State v. Laymon*, No. 89,792, unpublished opinion filed January 9, 2004. *Layton* is not cited, although this court's decision had already come down and would have supported the panel's result. The opinion did not address a *McAdam*-type argument at all.

This court's decision in *McAdam* was filed January 30, 2004. It reversed the Court of Appeals, holding that K.S.A. 65-4159 and K.S.A. 65-4161 could be identical offenses and that a defendant convicted for methamphetamine manufacture under 65-4159 and sentenced for a drug severity level 1 felony must instead be sentenced for a drug severity level 3 felony under 65-4161. *McAdam,* 277 Kan. at 145.

When Laymon's ADO lawyer filed his client's petition for review 5 days later, the *Luttig/Layton* line of argument had disappeared and the *McAdam* line of argument had become the focus. Only one issue was advanced for review: "The Court of Appeals erred by affirming an illegal sentence for conspiracy to manufacture methamphetamine because manufacture of methamphetamine is a severity level 3 drug felony under K.S.A. 65-4161(a), not a severity level 1 drug felony under K.S.A. 65-4159(a)."

This court directed the State to respond. The State's brief favored granting the petition for review, arguing only that *McAdam* was wrongly decided and that a hearing was necessary. The State failed to address whether Laymon's claim was properly before this court.

This court denied Laymon's petition for review on June 25, 2004.

This K.S.A. 2004 Supp. 60-1507 motion followed. Laymon argued that he was entitled to resentencing pursuant to *McAdam* because his direct appeal was not yet final when *McAdam* was decided and that this court's later denial of his petition for review had not constituted a decision on the merits of his *McAdam* issue. In the alternative, Laymon asserted that the ADO lawyer who handled his direct appeal was ineffective for failing to "adequately

present and preserve the *McAdam* issue." Laymon also appeared to contend in the alternative that his direct appeal brief's momentary reference to a *McAdam*-type argument was adequate to preserve the issue before the Court of Appeals.

The district judge denied Laymon's 60-1507 motion without appointment of counsel or any type of hearing. In his journal entry, the judge stated: (1) The Court of Appeals' decision in *State v. McCoin*, 32 Kan. App. 2d 638, 87 P.3d 325 (2004), was controlling and would prevent application of the *McAdam* rule on collateral attack; (2) Laymon had not appealed his sentence and could not have done so; and (3) given this court's order that the State address the *McAdam* issue while Laymon's petition for review of the direct appeal decision was pending, and its later denial of that petition, the merits of Laymon's *McAdam* claim were considered and rejected by this court, rendering his related ineffective assistance of counsel claim moot.

*Standard of Review*

When presented with a K.S.A. 60-1507 motion, a district court has three options:

" 'First, it may determine that the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, in which case it will summarily deny the petitioner's motion. Second, the court may determine from the motion, files, and record that a substantial issue or issues are presented, requiring a full evidentiary hearing with the presence of the petitioner. Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial.' " *Gaudina v. State*, 278 Kan. 103, 107-08, 92 P.3d 574 (2004) (quoting *Lujan v. State*, 270 Kan. 163, 170-71, 14 P.3d 424 [2000]).

The district judge elected to summarily deny Laymon's motion without reaching the merits of the ineffective assistance of direct appeal counsel claim. We have often stated that we review such a summary disposition under an abuse of discretion standard. See, *e.g., Estes v. State*, 221 Kan. 412, 414, 559 P.2d 392 (1977); see also *Gilkey v. State*, 31 Kan. App. 2d 77, 78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003). And Supreme Court Rule 183(h) (2004 Kan. Ct. R. Annot. 221) states that the "sentencing court"

has discretion to ascertain whether a 60-1507 claim "is substantial before granting a full evidentiary hearing and requiring the prisoner to be present."

However, to the extent a decision is based only upon the "motion, files, and record" of a case, an appellate court is as equipped as a district court to decide the issues efficiently and reliably, and both this court and the Court of Appeals routinely engage in de novo review of summary denials of 60-1507 motions while giving lip service to the abuse of discretion standard. See, *e.g.*, *Jackson v. State*, No. 90,152, unpublished Court of Appeals opinion filed April 23, 2004 (Johnson, J., concurring).

If, on the other hand, substantial questions of fact remain to be settled on a 60-1507 motion, a district court evidentiary hearing is necessary, and remand is required. This is particularly true when evidence on such facts can best be evaluated by the judge who presided at trial, and that judge will be assigned the 60-1507 motion.

Should we decide, unlike the district judge, that the merits of Laymon's claim that his ADO lawyer provided ineffective assistance of counsel on direct appeal must be reached,

"it must be shown that (1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) the appellant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful." *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988).

This standard incorporates the

"caveats and direction articulated in [*Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984),] and *Chamberlain* [*v. State*, 236 Kan. 650, 694 P.2d 468 (1985)] . . . :

'A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the ex-

ercise of reasonable professional judgment.' " 243 Kan. at 7-8 (quoting *Strickland*, 466 U.S. at 690).

Finally, it is important to note that the mere existence of an ineffective assistance of appellate counsel claim does not make remand inevitable. We have previously decided such an issue on appeal when we found adequate information in the record to take that step. See *e.g., State v. Jones*, 273 Kan. 756, Syl. ¶ 3, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002); *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000) (remand for hearing serves no purpose when record adequate to decide ineffective assistance issue). If remand is necessary because substantial issues of fact remain, Judge Keeley will wrestle with the ineffective assistance of appellate counsel analysis set forth above. If not, we will do the wrestling. The performance and prejudice prongs of ineffective assistance of counsel analysis are mixed questions of law and fact. *Easterwood v. State*, 273 Kan. 361, 370, 44 P.3d 1209, *cert. denied* 537 U.S. 951 (2002).

## Analysis

Laymon's brief enumerates several issues, but all of them boil down to one: Whether he is entitled to claim the sentencing benefit of our ruling in *State v. McAdam.*

There is no question that Laymon's direct appeal of his sentence was not final at the time we decided *McAdam.* And our precedent is clear that a criminal defendant whose direct appeal on a *McAdam*-type issue was still pending at that time is entitled to resentencing. See *State v. Barnes*, 278 Kan. 121, 122-28, 92 P.3d 578 (2004). On the other hand, our precedent is equally clear that invocation of *McAdam* will be unsuccessful if no direct appeal was taken and the invocation occurs for the first time on a collateral attack under 60-1507. See *Bryant v. State*, 280 Kan. 2, Syl. ¶ 3, 118 P.3d 685 (2005).

The facts and procedural history of this case fall somewhere between the *Barnes* and *Bryant* extremes—Laymon took a direct appeal from his sentence, but his ADO lawyer failed to preserve the *McAdam* line of argument, eliminating Laymon's chance of success via *McAdam* on direct appeal to the Court of Appeals or

on petition for review to this court. This left Laymon with no avenue to jurisdiction other than K.S.A. 2004 Supp. 60-1507. See *State v. McCoin,* 278 Kan. 465, 467-68, 101 P.3d 1204 (2004) (no jurisdiction over untimely motion for arrest of judgment based on *McAdam*; sentence in violation of *McAdam* not illegal, thus not candidate for modification under K.S.A. 22-3504; K.S.A. 2004 Supp. 60-1507 only possible jurisdictional vehicle for *McAdam* claim after direct appeal terminates); see also *Bryant,* 280 Kan. 2, Syl. ¶ 3 (*McAdam* claim cannot be successful if raised for first time by 60-1507 motion without tandem allegation of ineffective assistance of direct appeal counsel).

In addition, two preliminary matters demand attention.

First, the district judge stated erroneously that Laymon could not have appealed his sentence and, in fact, did not do so. A defendant may appeal his or her sentence if he or she is challenging the offense severity level assigned, K.S.A. 21-4721(e)(3), and Laymon did so.

Second, the district judge also was incorrect in overinterpreting our decision to deny Laymon's petition for review. Supreme Court Rule 8.03(f) (2004 Kan. Ct. R. Annot. 58) reads: "The denial of a petition for review of a Court of Appeals' decision imports no opinion on the merits of the case." Our denial of Laymon's one-issue petition was attributable to the absence of a Court of Appeals ruling on his late-blooming *McAdam* claim, not to a judgment on its merits. This denial was consistent with our refusal to address the *McAdam* issue raised too late in *Layton.* See *Layton,* 276 Kan. at 784 ("Although Layton stated as an 'alternative' issue in his petition for review that he should have been sentenced under 65-4161 rather than 65-4159, that issue was neither presented to the Court of Appeals nor decided by it. There is no Court of Appeals decision on this issue for the court to review in this case.").

A criminal defendant is entitled under due process to effective assistance of counsel on first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 396-98, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985). Although the failure of direct appeal counsel to raise a particular issue on appeal "is not, per se, to be equated with ineffective assistance of counsel," *Baker,* 243 Kan. at 9, a lawyer's failure to

foresee a change in the law may lead to 60-1507 relief if the failure was not objectively reasonable. See *Starnes v. State*, No. 88,225, unpublished Court of Appeals opinion filed November 21, 2003 (Sixth Amendment requires competence, not omniscience; appellate counsel's arguments conformed to law of Kansas at time arguments made); see also *Baker v. State*, 20 Kan. App. 2d 807, 810-11, 894 P.2d 221, *rev. denied* 257 Kan. 1091 (1995) (discounting ineffective assistance claim against lawyer who represented movant at time of plea; favorable change in law did not occur until years later). We have further stated:

"In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit." *Baker*, 243 Kan. at 10.

In this case, Laymon asserts that the *McAdam* line of argument was "obviously" stronger than the misdemeanor/felony argument that was raised in his direct appeal. He is particularly critical of his ADO lawyer's performance because colleagues of the lawyer at the ADO were acting as counsel in *McAdam* at the same time his direct appeal was pending. Thus, he argues, his lawyer certainly should have been aware of the *McAdam* issue's potential potency.

The State counters that Laymon's ADO lawyer cannot be expected to have been a "soothsayer." In addition, in the State's view, the lawyer may have been trying to avoid a "shotgun" approach to briefing that this court had earlier criticized as ineffective. See *Baker*, 243 Kan. at 10.

This is a dispute amenable to settlement by this court without remand. The only fact we do not know conclusively is whether Laymon's ADO lawyer was employing a conscious strategy in failing to pursue the *McAdam* line of argument at all, as the State has suggested he might have been doing to avoid a "shotgun" brief. Under the circumstances of this case, it is certain avoidance of a "shotgun" approach was not a factor. Laymon's entire appeal brief was only five pages long. It raised only the misdemeanor/felony

issue. Frustration of the appellate court with numerous nonmeritorious issues was not a serious danger, and we discern no other plausible strategy in the approach of Laymon's ADO lawyer on direct appeal.

Our evaluation of the merits of Laymon's ineffective assistance of counsel claim is informed by two recent Court of Appeals cases.

In one, *Shotts v. State*, No. 92,745, unpublished opinion filed May 27, 2005, a Court of Appeals panel addressed the failure of plea counsel to file *any* appeal of a client's sentence, thus necessarily failing to raise *McAdam*. In *Shotts*, the 60-1507 movant argued that his plea counsel was ineffective in failing to object to his crime severity level at his October 4, 2002, sentencing and in failing to pursue a *McAdam*-type argument on direct appeal. Had counsel raised a *McAdam*-type issue on direct appeal, it appears the appeal would still have been pending when *McAdam* was decided by this court, and *Barnes* would have mandated relief despite the earlier guilty plea. Relying on an earlier Court of Appeals decision in *Baker v. State*, 20 Kan. App. 2d 807, which rejected a 60-1507 claim of ineffective assistance against plea counsel for failing to anticipate a favorable change in the law several years later, the *Shotts* panel stated:

> "*Baker* instructs that the standard of reasonableness of a counsel's actions is judged under the law applicable at the time. . . .
> "The holding of *Baker* strongly indicates that the movant's counsel could not be deemed ineffective for failing to challenge the movant's crime severity level, especially when such a challenge could very well have jeopardized the plea agreement with the State. The same reasoning applies to movant's argument that counsel was ineffective for failing to file a notice of appeal. Movant has not demonstrated that a rational defendant, when considering the state of the law at the time, would have wished to appeal the classification of Shotts' crime of conviction, especially when considering the benefit Shotts received as a result of the plea agreement. The movant is not entitled to relief on his claim that counsel was ineffective for failing to file a direct appeal."

*Shotts* and *Baker* are not persuasive authority here for several reasons.

First, *Shotts* leaned heavily on the fact that the K.S.A. 60-1507 movant involved had taken advantage of a favorable plea agreement. As long as there is a direct appeal of a sentence, *Barnes* has

made that fact irrelevant in the *McAdam* context. In addition, we ruled on June 10, 2005, that the mere successful appeal of a sentence under *McAdam* after a favorable plea agreement does not permit the State to withdraw from the agreement unilaterally when the case is remanded. *State v. Boley*, 279 Kan. 989, 998-1002, 113 P.3d 248 (2005). Thus a defendant who chooses not to bring a *McAdam* claim on direct appeal from his or her sentence after a favorable plea agreement cannot be characterized as more "rational" than one who does.

Second, Laymon's ineffective assistance claim focuses on direct appeal counsel rather than plea counsel. It may be more reasonable generally to expect appellate counsel to be aware of issues that may bear fruit on appeal than it is to have the same expectation of plea counsel; but, even if it is not, it is certainly more reasonable in the specific case before us here. Laymon's direct appeal counsel was a fellow lawyer to those in the ADO who were simultaneously representing the defendant in *McAdam*, *i.e.*, the client whose case would soon set the favorable precedent Laymon seeks to have applied to his case. In these circumstances, Laymon is correct that we should charge his direct appeal counsel with knowledge that the *McAdam* issue was worthy of preservation and pursuit. Although *McAdam* was not yet the law of Kansas, the line of argument was in no worse position than the misdemeanor/felony line of argument under *Luttig* and *Layton* that counsel did pursue. In fact, the *McAdam* line of argument, though by no means "obviously" better, could be viewed as somewhat more promising because, at the time Laymon's brief was filed in his direct appeal, an analogous line of cases under *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002), was developing; and the *McAdam* line of argument had been rejected by only one Court of Appeals panel rather than the two that had already rejected the misdemeanor/felony line of argument.

The second Court of Appeals case deals with an ineffectiveness argument dependent in part on appellate counsel's status as a lawyer in the ADO who might have specific knowledge.

In that case, *Jackson v. State*, No. 90,152, unpublished opinion filed April 23, 2004, movant Marlon D. Jackson brought a 60-1507

challenge based on his conviction for felony murder in the death of a cofelon killed by the intended victim of a robbery. Jackson's direct appeal, which did not take issue with the propriety of a felony-murder conviction in such circumstances, was decided the same day as *State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001). In *Murphy*, this court held that a victim's lawful killing of a cofelon could not be the basis of a felony-murder conviction. *Murphy*, 270 Kan. at 809. Based on the *Murphy* holding, Jackson's counsel moved for rehearing of his direct appeal by this court, which was denied; and Jackson's 60-1507 filing followed.

The district court ruled against Jackson after a nonevidentiary hearing. On its way to affirming that ruling, the Court of Appeals panel stated:

"Next, Jackson argues that his appellate counsel was ineffective. Jackson states that the [decision] in *Murphy* . . . indicate[s] the idea that felony murder should not apply in his situation was not new or novel. Jackson argues that because his appellate counsel was from the Appellate Defender's office, the same office that handled Murphy's appeal, the issue of the application of felony murder to his situation should have been raised.

"Our Supreme Court's [decision] in *Murphy* . . . and Jackson's direct appeal were [both] issued on March 9, 2001. On March 12, 2001, Jackson's appellate counsel moved for rehearing. In the motion, counsel argued that the reasoning of *Murphy* . . . should be applied to Jackson's case. As soon as it was apparent that the law of the state had been adjusted, Jackson's appellate counsel sought to have the adjustment applied to his clients's appeal. Until the issuance of . . . *Murphy*, there was no indication that the law had changed and no reason for Jackson's appellate counsel to believe that arguing [against] the application of felony murder to his situation was anything but a futile exercise on an issue that had not been preserved below. As with Jackson's trial counsel, his appellate counsel was not ineffective for failing to anticipate changes in the law."

This court denied review of the Court of Appeals' decision in *Jackson*. As noted above, this court's denial of a petition for review does not necessarily reflect on the merits of the case in which the petition was filed. This is not necessarily true of a denial of a motion for rehearing, however. This court's refusal to rehear Jackson's direct appeal after *Murphy* was decided may have meant that we regarded *Murphy* as inapplicable to his case.

In addition, *Jackson* is not persuasive here because Jackson's lawyer raised several other issues in his direct appeal; thus the

addition of another previously unsuccessful issue could have posed the "shotgun" danger the State has invoked here. In contrast to Laymon's lawyer, it is logical and possible that Jackson's lawyer followed a conscious strategy by omitting the argument at issue. In addition, the failure to preserve the *Murphy*-type argument at Jackson's trial—a failure that could not have been attributable to the ADO lawyer—posed a significant procedural obstacle to direct appeal on that issue. Laymon's *McAdam*-type sentencing issue was not subject to the same procedural obstacle. Finally, in *Jackson* there is no indication that any analogous cases were winding their way through the appellate courts with some significant success, as was true of the *Frazier* line here.

In this case, we hold that the performance of Laymon's ADO lawyer on direct appeal was objectively unreasonable. Although *McAdam* had not yet been decided by this court when Laymon's direct appeal brief was filed and his oral argument heard, the state of the developing Kansas law counseled in favor of preserving the line of argument; and his lawyer, particularly given his colleagues' involvement in *McAdam*, can be charged with knowledge of the exact status of that law at the time. Laymon meets the first prong of the ineffective assistance of counsel test.

Had Laymon's ADO lawyer adequately pursued the *McAdam* line of argument on direct appeal, either his Court of Appeals panel could have rejected it, meaning we would have taken the issue up on petition for review to ensure a remand for resentencing on a drug severity level 3 basis; or the panel would have accepted it and remanded for resentencing without this court's intervention. Either would have meant Laymon received the relief he seeks by way of the motion underlying this appeal. Thus Laymon also meets the second prong of the ineffective assistance of counsel test: His ADO lawyer's unsatisfactory performance prejudiced him. Laymon's sentence must be vacated and his case must be remanded for resentencing under *McAdam*.

Reversed, sentence vacated, and case remanded for resentencing under *McAdam*.

LARSON, S.J., assigned.

LUCKERT, J., concurring: Although I agree with the majority's conclusion to reverse the summary denial of Laymon's K.S.A. 2004 Supp. 60-1507 motion, I would remand to the district court for a hearing on the ineffective assistance of counsel claim.

The majority concludes that remand is unnecessary because this court is capable of conclusively determining that Laymon's appellate lawyer did not employ a "plausible" strategy in failing to pursue the *McAdam* line of argument. This conclusion is reached in two steps. First, the majority considers a rationale for the defense counsel's conduct which is posited by the State: that the attorney was avoiding a "shotgun" approach to argument. Because of the brevity of the brief, the majority concludes "it is certain avoidance of a 'shotgun' approach was not a factor." Second, the majority could "discern no other plausible strategy in the approach of Laymon's ADO lawyer on direct appeal."

I agree with the first conclusion. However, I dissent from the portion of the majority opinion relating to the second step of the analysis. The appellate level is not the appropriate level for the act of discernment to occur. The only person who can accurately state whether there was a conscious strategy employed and, if so, the nature of that strategy is the attorney involved. Evidence of what may or may not have been considered should be presented in the district court, not at the appellate level with the State and this court attempting to read the mind of the attorney and playing Monday morning quarterback.

To do otherwise runs the risk that this court has not considered viable strategies or issues. For example, the majority does not discuss the possibility that in this case the defense attorney made the strategic decision to zealously seek the lowest penalty which could be imposed upon his client—a misdemeanor—rather than focus upon the alternative *McAdam* argument which, even if successful,

would result in a felony conviction. The attorney may have formed the opinion that raising the *McAdam* issue in passing was sufficient to preserve the argument. In retrospect we know this opinion, if formed, was incorrect. However, our precedent instructs that the conduct must be "viewed as of the time of counsel's conduct." *Graham v. State,* 263 Kan. 742, 754, 952 P.2d 1266 (1998). Perhaps other strategies were considered. We should not engage in this guessing game.

MCFARLAND, C.J., joins the foregoing concurring opinion.