NOT DESIGNATED FOR PUBLICATION

No. 119,140

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES WALTER GRIFFIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed January 4, 2019.
Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: James Walter Griffin filed a pro se motion for new trial based on newly discovered evidence under K.S.A. 22-3501. The district court summarily denied the motion for new trial after finding it was untimely filed. Construing Griffin's motion liberally, however, the district court also analyzed it as a motion for habeas corpus relief under K.S.A. 60-1507. Notwithstanding this liberal construction, the district court summarily denied Griffin's motion after finding that (1) the motion was filed outside the one-year statutory time limitation and (2) Griffin failed to establish manifest injustice to justify the untimely filing. Griffin appeals, arguing the district court erred by summarily denying him relief. Finding no error, we affirm.

1

On January 21, 2005, a jury convicted Griffin of one count of attempted murder in the second degree, one count of attempted aggravated robbery, and one count of conspiracy to commit aggravated robbery. During his direct appeal of those convictions, a panel of this court found the following facts:

"Robert Fraser was the general manager of a Carlos O'Kelly's restaurant in Topeka on January 24, 2002. When he arrived at the restaurant, he saw his wife giving a tour to 25 second graders on a fieldtrip and then went to his office to do some paperwork.

"At around 10 a.m., he was seated with his back to the office door when he heard a voice behind him say, 'Give me all your money.' Without turning, Frazier shoved the person away thinking it was an employee joking around and said, 'Go back to work, I don't really have time for this now.'

"Fraser then heard the voice which he believed to be the voice of a black male say, 'No, I'm serious, give me all your money.' Realizing the man was not an employee, Fraser turned and saw a man in dark clothing entirely covered except for his eyes pointing a gun at him held in the left hand and supporting his wrist with the other.

"Fraser got up to go to the safe to get the money for the man, but the man shot him once in the right shoulder and then ran out of the office without taking any money. After being shot, Fraser fell to the ground and passed out after yelling for his son, who was a cook in the restaurant. Fraser was immediately taken to Stormont-Vail Hospital where he testified they saved his life because his 'heart stopped a few times and they got it going again.' The bullet shattered Fraser's collar bone, then deflected at a downward angle and finally came to rest in his spinal column. Fraser is permanently paralyzed from the chest down as a result of the shooting.

"Robert Brett Fraser is Fraser's son and was a cook at Carlos O'Kelly's on the day of the shooting. Around 10, he observed an individual dressed all in black come in through the back door and head toward the office. Soon thereafter, Robert heard a loud pop but did not know what it was. He eventually went back toward the office where he observed his father lying on the floor with his head peeking out the office door. Robert called 911, went back to check on Fraser, then ran out the back door to search for the shooter in a nearby shopping center but he did not find anyone.

"Numerous eyewitnesses testified they observed one or more of the following on the morning of January 24, 2002: (1) A black car with dark tinted windows stop in the street near the back entrance of Carlos O'Kelly's; (2) the passenger, dressed in all black, exit the vehicle and enter the restaurant through the back door; (3) the passenger run from the restaurant back to the waiting vehicle a short time later; and (4) the car drive away. Many of these witnesses described the driver and passenger as black men and later identified Maurice Franklin as having been the passenger.

"Several people familiar with Griffin, including his cousin [Lametrius Crutchfield], the cousin's fiancé [Melissa Shay], and Griffin's girlfriend at the time of the crime [Natosha Utterback], testified he told them he was the driver for a botched robbery at a Mexican restaurant in Topeka where Franklin, his brother, shot someone who ended up paralyzed. These witnesses testified Griffin owned a black car with tinted windows in 2002. A Topeka detective testified he located a car matching the description, after receiving a tip, and determined the car was registered to Griffin and his wife.

"The State charged Griffin with attempted second-degree intentional murder, attempted aggravated robbery, and conspiracy to commit aggravated robbery.

. . . .

"Griffin was convicted of all the crimes with which he was charged. The court imposed aggravated sentences within the presumptive range for each conviction and ordered that they be served consecutively." *State v. Griffin*, No. 95,346, 2007 WL 806008, at *1-2 (Kan. App. 2007) (unpublished opinion).

Griffin raised 10 separate issues in his direct appeal but a panel of our court found no merit to any of the issues raised and ultimately affirmed his convictions. *Griffin*, 2007 WL 806008, at *1-10. Griffin's petition for review to the Kansas Supreme Court was denied and a mandate was issued on September 28, 2007, and filed with the district court on October 2, 2007.

Unable to prevail on direct appeal, Griffin filed a pro se motion for habeas corpus relief under K.S.A. 60-1507. In this motion, Griffin alleged: (1) he received ineffective assistance of counsel at trial and (2) the district court erred at trial by failing to instruct the jury on a lesser included offense. The district court summarily denied the motion and,

on appeal, a panel of this court affirmed the district court's ruling. *Griffin v. State*, No. 102,328, 2010 WL 923145, at *1-2 (Kan. App. 2010) (unpublished opinion). Griffin filed a petition for review, which the Kansas Supreme Court denied. The mandate was issued on May 20, 2010, and filed with the district court on May 24, 2010.

Griffin filed a second pro se motion for habeas corpus relief under K.S.A. 60-1507, in which he claimed ineffective assistance of his direct appeal counsel. The district court, again, summarily denied the motion. On October 7, 2011, a panel of this court affirmed the district court's ruling. *Griffin v. State*, No. 105,807, 2011 WL 4721477, at *1-3 (Kan. App. 2011) (unpublished opinion). Griffin's petition for review to the Kansas Supreme Court was denied, and a mandate was issued on March 19, 2012, and filed with the district court on March 20, 2012.

After his second motion for habeas corpus relief was denied, Griffin claims he filed a third pro se motion for habeas corpus relief, this time in the federal court pursuant to 28 U.S.C. § 2254 (2012). Griffin claims the United States District Court for the District of Kansas denied the motion but granted Griffin a certificate of appealability. Griffin asserts, however, that the Tenth Circuit Court of Appeals issued a mandate affirming the district court's ruling on February 8, 2016. Griffin claims he filed a petition seeking a writ of certiorari with the United States Supreme Court, but his petition was denied on October 3, 2016. Although the federal action to which Griffin refers appears to be highly relevant to the argument Griffin presented to the district court and, in turn, to us on appeal, the record on appeal does not include or make reference to any documents in the federal case. The only documents relating to the federal case (a letter from the United States Supreme Court informing Griffin of its denial of his petition for a writ of certiorari and what appears to be a copy of the electronic docket entries) are included as an Appendix to Griffin's brief.

4

On January 27, 2017, Griffin filed a pro se motion for a new trial, under K.S.A. 22-3501, in which he claimed that newly discovered evidence and malice by the prosecution entitled him to a new trial. In support of that motion, Griffin attached a notarized letter and statement signed by his cousin Lametrius Crutchfield, who purportedly sent the notarized letter and statement to Griffin's wife on March 15, 2013. In that letter, Crutchfield told Griffin's wife that Crutchfield had lied when he testified against Griffin at trial and that he only did so because prosecutors from both Kansas and Missouri were pressuring him and threatening him with legal consequences if he refused. Crutchfield also stated that the other witnesses who testified against Griffin also lied and/or exaggerated the truth because they wanted reward money.

On February 27, 2017, Griffin filed a pro se written request to amend his motion for a new trial to include a claim that the prosecution knowingly used perjured testimony to convict him in violation of his due process rights under *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). Finally, on April 17, 2017, Griffin filed a second written request to amend his motion for a new trial to include a claim that the prosecution failed to disclose exculpatory and impeachment evidence during the trial in violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The district court summarily denied Griffin's motion. In doing so, the district court first found that under K.S.A. 2017 Supp. 22-3501, Griffin's motion for a new trial based on newly discovered evidence was untimely because it was filed well outside the two-year statutory period. Then, construing Griffin's pro se pleading liberally, the district court also analyzed it as a motion for habeas corpus relief under K.S.A. 60-1507. However, the district court summarily denied Griffin's motion under that analysis as well after finding that (1) Griffin's motion was filed well outside the one-year statutory period and (2) no manifest injustice existed to justify Griffin's failure to file his motion in a timely manner. Griffin filed a motion for rehearing and a motion to amend for rehearing

5

in which he claimed the district court failed to make adequate findings of fact and conclusions of law regarding his *Brady* and *Napue* claims under Supreme Court Rule 183(j) (2018 Kan. S. Ct. R. 223). Although the district court issued a second memorandum decision and order to expound slightly on its previous ruling, the court ultimately affirmed its summary denial of Griffin's motion. Griffin timely filed a pro se notice of appeal on July 13, 2017.

ANALYSIS

"A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released" may "move the court which imposed the sentence to vacate, set aside or correct the sentence." K.S.A. 2017 Supp. 60-1507(a). However, to be timely, any action brought under K.S.A. 60-1507 must be brought within one year after the last appellate court exercises jurisdiction on the direct appeal. K.S.A. 2017 Supp. 60-1507(f)(1)(A). Otherwise, absent an affirmative showing by the prisoner that the time limitation must be extended to prevent a manifest injustice, the district court must summarily deny and dismiss the motion as untimely filed. K.S.A. 2017 Supp. 60-1507(f)(2)-(3).

When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014); see also *Laymon v. State*, 280 Kan. 430, 437, 122 P.3d 326 (2005) ("[T]o the extent a decision is based only upon the 'motion, files, and record' of a case, an appellate court is as equipped as a district court to decide the issues efficiently and reliably, and both this court and the Court of Appeals routinely engage in de novo review of summary denials of 60-1507 motions.").

*Timeliness*

Griffin argues that his motion for a new trial, which the district court construed as a motion for habeas corpus relief under K.S.A. 60-1507, was timely because it was filed within one year of the denial of his petition for a writ of certiorari to the United States Supreme Court in his federal habeas corpus action.

Pursuant to K.S.A. 2017 Supp. 60-1507(f)(1), any action seeking habeas corpus relief under that section must be brought within one year of:

> "(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or
> "(B) the denial of a petition for writ of certiorari to the United States supreme court or issuance of such court's final order following granting such petition."

In contrast to a habeas corpus challenge, which is considered to be collateral to or separate from a criminal case, the term "direct appeal" refers to an appeal from the judgment of conviction in the criminal case. See *Baker v. State*, 297 Kan. 486, 492, 303 P.3d 675 (2013) (measuring one-year statute of limitations in K.S.A. 60-1507[f] from milestones in criminal case, including resentencing on remand); *State v. Trotter*, 296 Kan. 898, 904-05, 295 P.3d 1039 (2013) (direct appeal for purposes of K.S.A. 60-1507[f] is appeal of conviction in criminal case itself); *Shumway v. State*, 48 Kan. App. 2d 490, 503, 293 P.3d 772 (2013) ("direct appeal" in K.S.A. 60-1507[f] refers to date upon which conviction became final in criminal proceedings).

Here it is undisputed that Griffin's convictions became final when the Kansas Supreme Court denied his petition for review on September 27, 2007. As such, his current action is untimely as it was not filed until January 27, 2017, well outside the one-year statutory period for filing an action under K.S.A. 60-1507. Despite this, Griffin argues that his action was timely under K.S.A. 2017 Supp. 60-1507(f)(1)(B) because it

was filed within one year of the denial of his petition for writ of certiorari by the United States Supreme Court in his federal habeas corpus action. But Griffin's argument misconstrues the plain language of the statute. The statute does not allow a prisoner to bring a motion for habeas corpus relief within one year of the United States Supreme Court denying a writ of certiorari in any action; rather, the statute only allows a prisoner to bring a motion for habeas corpus relief within one year of the denial of a writ of certiorari in the direct appeal of his or her criminal conviction. To hold otherwise would undermine the purpose of the one-year time limitation as it would allow prisoners to potentially bring actions under K.S.A. 60-1507 indefinitely, so long as they came within a year of the termination of unrelated appeals to the United States Supreme Court.

*Manifest injustice*

Alternatively, Griffin argues that even if his motion was untimely, his untimeliness should be excused because he properly established a colorable claim of actual innocence and therefore his motion should be heard to prevent a manifest injustice.

As noted above, a prisoner has one year from when a conviction becomes final to file a motion seeking habeas corpus relief. See K.S.A. 2017 Supp. 60-1507(f)(1). However, courts may extend that time limitation if doing so is necessary to prevent a manifest injustice. K.S.A. 2017 Supp. 60-1507(f)(2).

> "For purposes of finding manifest injustice under [K.S.A. 60-1507], the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2017 Supp. 60-1507(f)(2)(A).

8

Notably, the factors listed in K.S.A. 2017 Supp. 60-1507(f)(2)(A) constitute an exhaustive list. As such, courts are not permitted to consider other, nonlisted factors when determining whether manifest injustice exists. See *White v. State*, 308 Kan. 491, 496, 421 P.3d 718 (2018).

As a preliminary matter, the Kansas Supreme Court has held that if a prisoner files a motion outside of the one-year statutory period under K.S.A. 60-1507 and fails to affirmatively assert manifest injustice to the district court, the prisoner is procedurally barred from maintaining the action. *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 (2013). Here, Griffin failed to mention, let alone argue, manifest injustice in any of the many motions he filed with the district court. Griffin acknowledges this fact but, aside from asserting that pro se motions are to be liberally construed, Griffin does little to otherwise address or explain the failure. As such, Griffin's motion seeking habeas corpus relief is procedurally barred. See *Trotter*, 296 Kan. at 905.

Even if we were to overlook Griffin's procedural failure, he still fails to establish he would suffer a manifest injustice if the court did not consider his claims. Griffin's substantive claim of manifest injustice is that the newly discovered evidence he presents establishes a colorable claim of innocence. Specifically, Griffin argues Crutchfield's notarized letter/statement shows not only that Crutchfield lied as a witness at trial, but also shows that every other witness who testified at trial had ulterior motives and incentives to lie and/or exaggerate their testimony. Therefore, Griffin concludes, it is more likely than not that no reasonable juror would have convicted him in light of Crutchfield's statement.

We are not persuaded by Griffin's argument. First, Griffin's argument ignores the substantial amount of evidence supporting Griffin's convictions. Such evidence included the testimony of numerous eyewitnesses who observed a black car with tinted windows at the scene, who described the driver and passenger of the car as black men, and who later

9

identified the passenger as Maurice Franklin, Griffin's brother. This evidence also included testimony from numerous people, including Crutchfield, that Griffin admitted to them that Griffin was the driver during the robbery attempt. And finally, this evidence included testimony from a Topeka detective who determined that a car matching the witness' description was registered to Griffin and his wife. Thus, even without Crutchfield's statement repudiating his testimony, there was sufficient evidence upon which a reasonable juror could have convicted Griffin for his participation in the attempted robbery at Carlos O'Kelly's.

Second, as both the State and the district court noted, the reliability of Crutchfield's notarized letter and statement is minimal at best. This is largely because it is filled with fantastical claims—such as a SWAT team in full tactical gear picking a lock and invading a house with guns drawn, on multiple occasions, just to serve subpoenas—that are simply not reasonable to believe. Furthermore, Crutchfield's unilateral claim that other witnesses lied or exaggerated the truth in an effort to obtain reward money is uncorroborated, unsupported by the record, and conclusory in nature. Therefore, a reasonable juror would place little to no probative value on Crutchfield's letter/statement and would instead rely on the substantial amount of more reliable evidence to convict Griffin.

For all of these reasons, and even if Griffin could overcome the procedural hurdle of his untimely filing, we find Griffin has failed to make a colorable claim of actual innocence or otherwise show that the district court's summary denial of his motion for habeas corpus relief resulted in a manifest injustice.

Affirmed.