(54 P.3d 974)

No. 87,331

STATE OF KANSAS, *Appellee,* v. PAUL J. LUTTIG, JR., *Appellant.*

Opinion filed October 4, 2002.

*Shawn Minihan,* assistant appellate defender, and *Randall Hodgkinson,* deputy appellate defender, for appellant.

*Ty Kaufman,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., GREEN, J., and ROGG, S.J.

GREEN, J.: Paul J. Luttig, Jr., appeals his convictions in a bench trial of unlawful manufacture of methamphetamine and possession of drug paraphernalia. On appeal, Luttig contends that the trial court wrongly failed to suppress certain evidence obtained in an illegal search. In addition, Luttig maintains that the trial court improperly imposed a felony sentence instead of a misdemeanor sentence for his conviction of unlawful manufacture of methamphetamine. We disagree and affirm.

On May 21, 2000, when Luttig's wife, Tammy, returned home to pick up some of her personal belongings, she saw Luttig brandishing a shotgun in a suicidal manner. Luttig's behavior prompted Tammy to call the police. When Luttig opened the door to his house, the police took him into custody. The police saw a sawed-off shotgun and a .22-caliber weapon on a couch.

Although the police did not have any specific information about other people being in the house, they saw a car in the driveway that was not registered to Luttig. This fact led police to believe that other individuals could be in the house. As a result, the police made a protective sweep to look for other people in the house and to retrieve any other weapons laying out. During the sweep, an officer found a .22-caliber rifle lying on a windowsill in an upstairs bedroom. On the floor just a few feet away from the rifle, there were ziplock baggies, syringes, and other items known by the of-

ficer to be drug paraphernalia. No other persons were found in the house.

Luttig moved to suppress the evidence obtained in the search of the house, arguing that the officers' warrantless search of the house was not justified and Tammy's consent was invalid. At the suppression hearing, Detective Terry explained why he ordered the protective sweep:

"I immediately ordered a protective sweep of the residence to make sure there was nobody else in the residence that had been harmed or possibly harm us [*sic*]. Also to look for more weapons as my initial entry into the residence I found the sawed off shotgun but I was told there was [*sic*] possibly more weapons."

In denying Luttig's motion, the trial court determined that the protective sweep was justified and Tammy's consent was valid.

Luttig challenges the trial court's denial of his motion to suppress on a number of grounds. First, Luttig argues that the officers did not conduct a lawful protective sweep of his house. Second, Luttig maintains that Tammy lacked authority to consent to a search of his house because she was not living there at the time. Third, Luttig contends even if Tammy had had authority to consent to a search, her consent was not valid because the officers failed to inform her of the true focus of the search.

When analyzing a trial court's decision on a motion to suppress evidence, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from the facts by a de novo standard. *State v. Pritchett*, 270 Kan. 125, 128, 11 P.3d 1125 (2000). Accordingly, this court will not reweigh the evidence but will conduct an independent review of the trial court's ultimate determination of whether to suppress the evidence. See 270 Kan. at 128.

*Protective Sweep:*

Luttig maintains the officers conducted an illegal warrantless search of his house because a protective sweep was not justified under the circumstances.

The Fourth Amendment to the United States Constitution bars only unreasonable searches and seizures. *Maryland v. Buie*, 494 U.S. 325, 331, 108 L. Ed. 2d 276, 110 S. Ct. 1093 (1990). Gener-

ally, the search of a home is not reasonable without a warrant or probable cause. 494 U.S. at 331. However, an exception articulated in *Buie* is applicable to the present case.

In *Buie,* the defendant and an accomplice committed an armed robbery, and an arrest warrant was subsequently executed. Upon the defendant's emergence from the basement of his home, officers arrested him and conducted a search of the basement to make sure no one else was present. An officer discovered incriminating evidence in plain view in the basement. The defendant challenged the warrantless search of the basement and sought suppression of the incriminating evidence.

The United States Supreme Court recognized an exception to the general rule against warrantless searches for a "protective sweep" incident to an in-home arrest when the officer has a reasonable belief, based on specific and articulable facts, that the area to be swept harbors someone posing a danger to those on the arrest scene. 494 U.S. at 327. The Court defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." 494 U.S. at 327.

The Court explained when such a sweep is appropriate:

"[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. . . .

"We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." 494 U.S. at 334-36.

Our Supreme Court has adopted the definition of protective sweep as set forth in *Buie*. See *State v. Johnson,* 253 Kan. 356, 370, 856 P.2d 134 (1993). In *Johnson,* the police suspected that the

defendant and an accomplice were responsible for the disappearance of a confidential drug informant. After arresting the defendant and the accomplice in the defendant's residence, the officers proceeded to conduct two or three sweeps through the house, at some point even looking in a washing machine. After the sweeps, the officers obtained a search warrant and seized evidence from the house and pickup.

Our Supreme Court determined that specific and reasonable facts and the inferences drawn therefrom existed for a protective sweep because the officers knew there were guns in the house, they had previously heard female voices in the house who were not accounted for, and they were concerned someone could have entered the home through the rear windows or doors. The court held, however, that the scope and length of the protective sweeps exceeded the limitations established in *Buie. Johnson,* 253 Kan. at 370.

Here, as the State notes, Luttig's challenge to the officers' sweep of his house is based largely on a misstatement of the evidence. Citing *Buie,* Luttig maintains that the protective sweep was illegal because it was not conducted under an in-home arrest. Contrary to Luttig's contention, his arrest did not take place outside of his house. The testimony presented during the suppression hearing clearly established that the officers took Luttig into custody while he was inside the house.

Luttig also maintains that the officers did not have reasonable and articulable facts that his house harbored an individual posing a danger to the officers. He admits there was a car in the driveway that did not belong to him but maintains this fact was not enough to warrant a protective sweep of his house.

Contrary to Luttig's claim, the officers had been told that Luttig was armed with a sawed-off shotgun. Upon arriving, the officers saw a car in the driveway that did not belong to Luttig. In fact, the car was registered to a person recently convicted on drug charges.

Importantly, unlike the situation in *Johnson,* there is nothing in the record to suggest the officers conducted anything more than a cursory sweep through Luttig's house to look for persons and weapons. The drug evidence was discovered in plain view next to a gun.

In denying Luttig's motion to suppress, the trial court found there was "adequate and sufficiently narrow justification" for the officers' protective sweep of Luttig's house. The court explained:

"The purpose of the sweep was found to be protection of officers and to the ascertaining of the extent of the situation, including finding of any victims in the house. On the basis of finding that the protective sweep was legitimate, the Court found that there was no taint which could adversely effect or implicate to [sic] consent search which followed."

Giving deference to the trial court's findings, the officers possessed a reasonable belief that they were in danger, such that their protective sweep of the house was legitimate. See *Buie*, 494 U.S. at 334, 337. Further, the sweep did not exceed the scope and length limitations set forth in *Buie*. Accordingly, the trial court correctly refused to suppress the drug evidence found in plain view during the protective sweep. Finally, because of our holding, we need not address Luttig's argument about Tammy's lack of authority to consent to the search of the house.

*Sentence:*

Luttig argues that the trial court erred in imposing a felony sentence for his conviction of unlawful manufacture of methamphetamine. He was charged and sentenced under K.S.A. 2001 Supp. 65-4159(b), a drug severity level 1 felony. According to Luttig, both K.S.A. 2001 Supp. 65-4159 and K.S.A. 2001 Supp. 65-4127c set forth penalty provisions for the same crime, but the latter sets the severity level as a class A nonperson misdemeanor; thus, the trial court was required to sentence him according to the lesser penalty provision.

As an initial matter, Luttig did not raise this issue before the trial court. Generally, his failure to do so would preclude appellate review. See *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999) (issue not presented to trial court will not be considered for first time on appeal). However, under K.S.A. 22-3504(1), courts have jurisdiction to correct an illegal sentence at any time. *State v. Sisk*, 266 Kan. 41, 43, 966 P.2d 671 (1998).

Interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, is a question of law, and an appellate court's

review is unlimited. *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998). This court will strictly construe the statutes at issue in favor of Luttig; any reasonable doubt about their meaning will be decided in his favor. See *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998). However, the rule of strict construction is subordinate to the requirement that judicial interpretation be reasonable and sensible to effect legislative intent. 264 Kan. at 14.

K.S.A. 2001 Supp. 65-4159 provides, in relevant part:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog.

"(b) Any person violating the provisions of this section with respect to the unlawful manufacturing or attempting to unlawfully manufacture any controlled substance or controlled substance analog, upon conviction, is guilty of a drug severity level 1 felony and the sentence for which shall not be subject to statutory provisions for suspended sentence, community work service, or probation."

K.S.A. 2001 Supp. 65-4127c provides, in relevant part:

"Except as otherwise provided in K.S.A. 65-4127a and 65-4127b and K.S.A. 2001 Supp. 65-4160 through 65-4164 and amendments thereto, any person violating any of the provisions of the uniform controlled substances act shall be guilty of a class A nonperson misdemeanor."

Luttig relies on *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989), and *State v. Clements*, 241 Kan. 77, 83, 734 P.2d 1096 (1987), for the proposition that where two offenses contain identical elements but carry different severity level classifications, a defendant convicted of either crime may be sentenced only according to the lesser severity level. His reliance on those cases is misguided, however, as only one of the statutes at issue here actually defines a crime; the other statute is merely a general penalty provision. Nevertheless, further examination of Luttig's claim is warranted.

By a strict reading of K.S.A. 2001 Supp. 65-4127c, Luttig is correct that K.S.A. 2001 Supp. 65-4159 is not one of the statutes exempted from the general penalty provision applicable under K.S.A. 2001 Supp. 65-4127c. Under standard rules of statutory construction, statutes should not be read so as to add that which is not readily found therein or to read out what, as a matter of ordinary

language, is in it. *Matjasich v. Kansas Dept. of Human Resources*, 271 Kan. 246, 252, 21 P.3d 985 (2001). This would be the end of the analysis had K.S.A. 2001 Supp. 65-4159(b) not provided its own penalty provision. Because there is a specific penalty provision set forth in K.S.A. 2001 Supp. 65-4159(b), however, this court is faced with a conflict between a general and special statute.

"General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. [Citation omitted.]" *In re Estate of Antonopoulos*, 268 Kan. 178, 189, 993 P.2d 637 (1999). Here, K.S.A. 2001 Supp. 65-4159(b) is the more specific statute, as it defines the crime of which Luttig was convicted. In contrast, as evidenced by its title, K.S.A. 2001 Supp. 65-4127c is a general penalty statute. There is nothing to suggest the legislature intended for the penalty set forth in the general statute to trump that which was prescribed in the special statute. Accordingly, we determine that the penalty provision in K.S.A. 2001 Supp. 65-4159(b) prevails.

Our determination is further evidenced by the marked disparity between the penalties prescribed in the statutes at issue. The statute defining the crime assigns it the most severe drug penalty level, while the general statute, if applied, would make the crime a misdemeanor. As the State notes, the legislature has defined the unlawful manufacture of methamphetamine as an inherently dangerous felony. See K.S.A. 21-3436(a)(14); *State v. LaMae*, 268 Kan. 544, 556, 998 P.2d 106 (2000). It would be absurd and contrary to stated legislative intent to impose a sentence consistent with a class A nonperson misdemeanor for such a crime. Statutes should be construed to avoid unreasonable results. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

Affirmed.