(122 P.3d 831)
No. 92,886

STATE OF KANSAS, *Appellee*, v. SCOTT GENE LAFLEUR, *Appellant*.

Opinion filed November 18, 2005.

*Patrick H. Dunn*, assistant appellate defender, for the appellant.

*Ellen H. Mitchell*, county attorney, and *Phill Kline*, attorney general, for the appellee.

Before RULON, C.J., PIERRON and HILL, JJ.

PIERRON, J.: Scott G. Lafleur appeals his jury trial convictions for the sale of methamphetamine and the unlawful use of a communication facility. We affirm.

On December 4, 2003, Lafleur was charged with the sale of methamphetamine, in violation of K.S.A. 65-4161; possession of methamphetamine without drug tax stamps affixed, in violation of K.S.A. 79-5204; possession of drug paraphernalia, in violation of K.S.A. 65-4152(a)(2); and unlawful use of a communication facility, in violation of K.S.A. 65-4141.

These charges stemmed from events which occurred on July 31, 2003.

Kamisha Hill testified that her home was the subject of a search warrant on July 17, 2003. She was arrested and questioned about drug activity. Subsequently, Hill entered into an agreement with the police department's drug task force (DTF) to provide information and complete controlled drug buys related to further investigations. The DTF did not provide her with a name or targeted individual; however, she was able to provide them with the name of Scott Lafleur, "a longtime friend." On the night in question, she contacted Lafleur on his cell phone. They briefly discussed her buying an "8-ball" of illegal drugs from him for $300.

Hill contacted Investigator Watkins of the DTF and told him about her conversation with Lafleur. She met with DTF members to be searched and wired. The DTF also provided her with $300 for the controlled buy. Hill called Lafleur's cell phone a second time, but his girlfriend, Amber Gray, answered. Lafleur then got on the phone and suggested a place and time for them to meet.

Approximately 10 minutes later, Hill drove to the Petro 2 station and met Lafleur and Gray. Hill approached the driver's side of Lafleur's vehicle and spoke to Lafleur. Lafleur asked Hill about the hat she was wearing and suggested that Hill was a "narc." Hill told him if he did not trust her to "forget it." At that time, Gray got out of Lafleur's car and into Hill's vehicle, saying she needed barbecue sauce from a fast food restaurant's drive-through. Hill did as Gray requested and, between the drive-through's windows, Gray handed Hill a ziploc bag in exchange for the $300. Gray then had Hill "drive around a bit." Lafleur had remained in his vehicle throughout this time. Gray got out of Hill's car and Hill went directly to meet DTF officers.

Lafleur had a contrary version of the events of July 31, 2003. Lafleur claimed he was driving around with Gray, who was just a friend he gave rides to when needed, when Hill called his cell phone. Lafleur did not know what Hill wanted because she was acting "in a strange way." Gray suggested they "go see what [Hill] wants," so Lafleur drove to the Petro 2 station. He claims it was not his idea to meet Hill.

Lafleur and Gray went through the fast food restaurant's drive-through to get food. Gray got out of Lafleur's car to complete her food order, which lacked barbecue sauce. Hill had parked next to them. Gray got into Hill's car, leaving Lafleur to sit in his car to wait until she came back. Lafleur drove around until Hill pulled next to his vehicle again, Gray got out of Hill's car, and Gray got back into Lafleur's car. Lafleur testified, "[Hill] drove off and we drove off." Lafleur contended he did not know Gray was going to sell drugs to Hill and claimed innocence.

The contents of the ziploc bag purchased that night were determined to be 2.56 grams of methamphetamine. Lafleur's trial was held on March 10, 2004, at which time Hill and Lafleur testified as stated above. The events were also described by Investigator Watkins, such as the second phone call Hill made to Lafleur on the evening in question and what occurred at the Petro 2 station.

In addition to Lafleur's testimony for the defense, Hill's brother testified that he talked with Hill after Lafleur's arrest and Hill stated she did not know why Lafleur was in jail. He claimed Hill said the "deal was done with [Gray]." This testimony was rebutted by Hill.

At the close of testimony, prior to the jury instructions conference, the trial court dismissed the possession of methamphetamine without a drug tax stamp and the possession of drug paraphernalia charges. There was no request for an entrapment instruction. Lafleur's closing argument set forth his theory of defense to be Hill's lack of reliability and credibility and the lack of any other evidence of Lafleur's knowing involvement in the drug sale. In other words, he did not do it. The jury received instructions regarding informant testimony and an instruction regarding Lafleur's guilt if they believed he had assisted or promoted Gray's crime in selling Hill the drugs. The jury convicted Lafleur of the sale of methamphetamine and the unlawful use of a communication facility.

On March 11, 2004, Lafleur filed a motion to arrest judgment based upon the following charging document:

"Comes Now Ellen Mitchell, Saline County Attorney, for and on behalf of the State of Kansas, and gives the Court to understand and be informed that in Saline County, Kansas, on or about July 31, 2003, one SCOTT GENE LAFLEUR and

AMBER NICOLE GRAY did then and there unlawfully, willfully, and feloniously sell a stimulant drug, to wit: methamphetamine.

K.S.A. 65-4161 (Sale of Methamphetamine)

Level 3D Felony (Sentence Range 14-51 months)"

Lafleur argued that the element of intent to sell methamphetamine was missing in the complaint, making the complaint fatally defective.

A hearing was held on the motion prior to Lafleur's sentencing. After argument, the trial court, citing K.S.A. 21-3201, concluded the State's use of the word "willfully" was sufficient for the general intent crime of the sale of methamphetamine. All of Lafleur's post-trial motions were denied. Based on his criminal history score of C, Lafleur was sentenced to 40 months for the primary crime of the sale of methamphetamine. Additionally, pursuant to K.S.A. 65-4141(c), he was sentenced to 8 months for a nondrug severity level 8, nonperson felony. The sentences were ordered to run concurrently.

On appeal, Lafleur argues there was a functional equivalent of a request for an entrapment instruction. Alternatively, he concedes the standard of review is whether the omission was clearly erroneous based on no request being made for the instruction.

" 'It is well established that [an appellate] court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party *neither requested the instruction nor objected to its omission.*' [Citation omitted.]" *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002).

The statement Lafleur alleges was a "functional request" for an entrapment instruction was only a reiteration of the trial court's question, apparently made at the preliminary hearing, as to whether the State could charge someone with the unlawful use of a communication facility when the call was initiated by the State or the State's agent. See K.S.A. 65-4141 (it is unlawful for any person to knowingly or intentionally use any communication facility to commit, cause, or facilitate a drug felony).

The word "entrapment" was not used during the instructions conference by defense counsel and no such instruction was proffered.

We must utilize the clearly erroneous standard of review. There is no record of the preliminary hearing in the record on appeal; furthermore, an instruction request should certainly be explicit enough to invoke an instruction or a discussion about an instruction. Here, it appears defense counsel brought up the trial court's earlier statement in an attempt to dismiss the unlawful use of a communication facility charge, not to invoke an instruction being given.

More importantly, Lafleur's defense was that he was not involved in the sale at all. An entrapment instruction would not have been congruent with this defense. "In a criminal action, a trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence." *State v. Williams*, 277 Kan. 338, 356, 85 P.3d 697 (2004).

"A defendant who refuses to admit any involvement in an incident out of which a criminal charge arises cannot use entrapment as a defense. A defendant who admits the acts charged by the state, but claims the acts fail to support a criminal charge, may raise entrapment as an additional defense. In situations where the defendant admits some involvement, but fails to admit all the facts alleged by the state, [the defendant] may or may not be entitled to claim entrapment, depending on the degree of involvement [the defendant] admits. Admission of substantial involvement would tend to permit the defense, while slight and limited admission would tend to deny the defense." *State v. Einhorn*, 213 Kan. 271, 273, 515 P.2d 1036 (1973).

The *Einhorn* court noted that the defendant admitted possession of marijuana and his participation in acts leading up to the transfer of drugs. The court remanded that case for a new trial because the defendant was entitled to the instruction. 213 Kan. at 273-75. However, in this case, Lafleur denied any participation or knowledge of the drug transfer and did not ask for an instruction based upon entrapment. His defense was based upon his total lack of involvement in and knowledge of the drugs or the transaction between Hill and Gray. This jury received an informant instruction, which stated that the jury should consider with caution the testimony of an informant. This instruction was based upon Lafleur's theory of defense, *i.e.*, Hill was neither credible nor reliable. The trial court was correct in not giving an entrapment instruction.

Lafleur's statement that he had an innocent conversation with Hill was not an admission of wrongdoing.

Lafleur also appears to argue a lack of sufficiency of evidence related to the unlawful use of a communication facility conviction. He alleges there was no evidence whatsoever that he was in the habit of arranging for illegal drug sales using a phone. However, Hill specifically testified that she knew Lafleur's cell phone number and that he spoke to her on the phone about selling the 8-ball of methamphetamine for $300. She also testified that a second call confirmed the time and location of the transfer of the drugs. K.S.A. 65-4141 does not require that a pattern or habit exist for the crime to be committed, nor does it express the need for the State to prove the defendant actually dialed the phone. The jury chose to believe Hill's testimony over Lafleur's and convicted him of the unlawful use of a communication facility based on Lafleur's use of his cell phone for committing, causing, or facilitating a drug sale to Hill on July 31, 2003. There was sufficient evidence to support that verdict.

Next, Lafleur contends the trial court erred in not finding the charging document for the sale of methamphetamine fatally defective because of the omission of the words "or intentionally."

The sufficiency of a charging document to confer jurisdiction is a question of law over which an appellate court has unlimited review. *State v. Shirley*, 277 Kan. 659, 661, 89 P.3d 649 (2004). Because Lafleur filed a motion to arrest judgment within 10 days of his guilty verdict, this court reviews the charging document under the pre-*Hall* standard. See 277 Kan. at 661-62 (citing *State v. Hall*, 246 Kan. 728, 793 P.2d 737 [1990]).

Under the pre-*Hall* standard, the focus is on technical considerations or the technical compliance with the essential elements of the crime. "If the charging document does not set out the essential elements of the crime, it is fatally defective and the conviction must be reversed for lack of jurisdiction." [Citation omitted.] 277 Kan. at 661-62.

K.S.A. 65-4161 states it is "unlawful for any person to sell, offer for sell, *or* have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute; dis-

pense or compound any opiates, opium or narcotic drugs, or any stimulant . . . ." (Emphasis added.)

The trial court relied on this language as well as the language of K.S.A. 21-3201(b), which states: "Intentional conduct is conduct that is purposeful and willful and not accidental. As used in this code, the terms 'knowing,' 'willful,' 'purposeful,' and 'on purpose' are included within the term 'intentional.' "

The trial court did not err in denying Lafleur's motion to arrest judgment. The terms "willful" and "intentional" are synonymous. See *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 181, 872 P.2d 252 (1994) (In common usage, the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional."); *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202-03, 855 P.2d 77 (1993) ("Willful and intentional are synonymous."). The complaint was not defective.

Finally, Lafleur argues K.S.A. 65-4127c should determine the severity level for the crime of unlawful use of a communication facility, rather than K.S.A. 65-4141. This would mean he would be guilty of a class A nonperson misdemeanor, as opposed to his being found guilty of a nondrug severity level 8, nonperson felony. His argument fails.

"Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. [Citation omitted.]" *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

Lafleur notes that K.S.A. 65-4141 is part of the Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.*, and contends that it is, therefore, subject to the sentencing provisions of K.S.A. 65-4127c. K.S.A. 65-4127(c) states:

"Except as otherwise provided in K.S.A. 65-4127a and 65-4127b and K.S.A. 65-4160 through 65-4164 and amendments thereto, any person violating any of the provisions of the uniform controlled substances act shall be guilty of a class A nonperson misdemeanor. The criminal penalties prescribed for violations of the uniform controlled substances act shall not be applicable to violations of the rules and regulations adopted by the board pursuant thereto."

As noted by Lafleur, K.S.A. 65-4141 is not among the enumerated statutes that are excepted from the general provisions of

K.S.A. 65-4127c. However, K.S.A. 65-4141 was passed after the original K.S.A. 65-4127c and contains a provision specific to that section making it a nondrug severity level 8 nonperson felony.

We do not believe Lafleur successfully analogizes this case to *State v. Layton*, 276 Kan. 777, 80 P.3d 65 (2003). While the statute in question here is part of the Uniform Controlled Substances Act and is not excepted under the general provisions of K.S.A. 65-4127c, its specific penalty provision removes it from the general penalty section.

"General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. [Citation omitted.]" *In re Estate of Antonopoulos*, 268 Kan. 178, 189, 993 P.2d 637 (1999); *State v. Luttig*, 30 Kan. App. 2d 1125, 1132, 54 P.3d 974, *rev. denied* 275 Kan. 967 (2002).

It is clear that the intent of the legislature was to consider any violation of K.S.A. 65-4141 to be a nondrug severity level 8, nonperson felony. K.S.A. 65-4141(c) states: "Any person who violates this section shall be guilty of a nondrug severity level 8, nonperson felony."

The trial court was correct.

Affirmed.