(155 P.3d 732)
No. 96,400

STATE OF KANSAS, *Appellant,* v. MICHAEL J. LEMONS, *Appellee.*

Opinion filed April 13, 2007.

*Michael X. Llamas*, assistant county attorney, and *Phill Kline*, attorney general, for appellant.

*Gregory D. Bell*, of Forker, Suter & Rose, of Hutchinson, for appellee.

Before GREEN, P.J., ELLIOTT and MALONE, JJ.

GREEN, J.: Michael J. Lemons was charged with seven counts concerning possession and manufacture of methamphetamine after police conducted a protective sweep and a later search of his residence. Lemons moved to suppress all evidence obtained as a result of the sweep and search. The trial court granted Lemons' motion to suppress evidence. The State filed an interlocutory appeal, contending that the protective sweep was done to protect police from harm. Because the sweep was not made incident to a lawful arrest and because the evidence failed to show a likelihood of harm to police or to others, we determine that the trial court properly granted defendant's motion to suppress. Accordingly, we affirm.

Byron Tyner, a Harvey County investigator, contacted Lemons at Lemons' home in Hesston, Kansas. Tyner and two other officers wanted to discuss with Lemons accusations made against him earlier that evening concerning his involvement with methamphetamine manufacturing. The officers initially knocked on the front door of the residence. After getting no response, Tyner went to the back door because he heard a television or radio. Lemons answered the back door. The other officers joined Tyner and Lemons in the back. They asked Lemons if they could come in and talk to him. Lemons invited all the officers into his residence.

Lemons and the officers went into the back bedroom. Lemons laid on the bed and the officer stood near the doorway. The hallway outside the bedroom was obscured by a bed sheet hanging from the ceiling to the floor. Tyner asked Lemons if anyone else was in

the residence. Lemons said no. Tyner asked Lemons a second time; Lemons again said no. Tyner told Lemons that he was going to check regardless. At this time, Lemons had not given the officers permission to search the residence.

Tyner did not find any people or animals during the sweep. Nevertheless, he noticed remnants of a lithium battery in plain view on the kitchen counter. This caught his attention because a battery lithium strip is used in the production of methamphetamine. Tyner did not seize the evidence. When he returned to the bedroom, Tyner arrested Lemons based on the battery remnants and information gained earlier that evening. Tyner told Lemons that he was under arrest but did not read Lemons his *Miranda* rights.

As the officers and Lemons started to leave the residence, Lemons told the officers that they could search the residence. The officers told Lemons that they would not search the residence without his presence. The officers then searched the residence with Lemons' permission and in his presence. They found numerous items used to manufacture methamphetamine. Additionally, Tyner noticed the very strong odor of anhydrous ammonia in the refrigerator and freezer. The officers and Lemons left the residence because they did not feel safe because of the ammonia's volatility. Tyner later requested, and was granted, a search warrant.

Lemons was charged with seven counts: (1) manufacture or attempted manufacture of methamphetamine, (2) conspiracy to manufacture methamphetamine, (3) possession of pseudoephedrine with intent to manufacture methamphetamine, (4) possession of anhydrous ammonia in an unapproved container, (5) contributing to a child's misconduct or deprivation, (6) possession of hallucinogenic drugs, and (7) possession of drug paraphernalia. Counts two and five were dismissed upon the State's motion. Lemons was held over for trial on the remaining charges. He pled not guilty to each charge.

Lemons moved to suppress all the evidence obtained in the search. He argued that Tyner did not possess any independent knowledge or information that other people were in the residence, even after Lemons told him no one else was present. Furthermore, Lemons argued that he did not consent to a search of his residence.

Finally, Lemons argued that the officers were invited guests in his home and had no legal justification for turning a consensual encounter into a nonconsensual search.

During the suppression hearing, Tyner testified that he was a clandestine laboratory investigator. He further testified that he asked Lemons whether there were other people in the residence because his view of the rest of the residence was blocked by a sheet. Tyner further testified that based on experience, methamphetamine labs tend to involve potentially dangerous people or animals. He testified that the officers were there to question Lemons about possible criminal activity, but they did not have arrest or search warrants.

Tyner testified that he decided to do a protective sweep to insure officer safety and make sure no people or vicious animals were present. He did not intend to look for illicit substances. Tyner admitted that he was unable to articulate specific facts that something or someone dangerous was in the residence.

In granting Lemons' motion to suppress, the trial court stated that the facts of the case were well developed and not disputed. The court further stated that there was no in-home arrest to justify a protective sweep, nor did Tyner articulate specific facts to justify a search.

*Was the trial court's grant of Lemons' motion to suppress supported by substantial competent evidence?*

The State argues that the evidence should not be suppressed based on the protective sweep exception to warrantless searches. It contends that the sweep was performed for officer safety reasons because Lemons was being investigated for manufacturing methamphetamine. In contrast, Lemons argues that the protective sweep exception should not apply because the sweep was conducted before his arrest.

When reviewing a motion to suppress, an appellate court determines whether the factual underpinnings of the trial court's decision are supported by substantial competent evidence. Moreover, an appellate court does not reweigh evidence, determine witness credibility, or resolve conflicts of evidence. Nevertheless, the ulti-

mate legal conclusion drawn from those facts is a legal question requiring an appellate court to apply a de novo standard of review. *State v. Ackward,* 281 Kan. 2, 8, 128 P.3d 382 (2006). "When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court." *State v. Vandiver,* 257 Kan. 53, 58, 891 P.2d 350 (1995). The State bears the burden of proof in a suppression hearing. It must prove, by a preponderance of the evidence, the lawfulness of the search and seizure. *State v. Porting,* 281 Kan. 320, 324, 130 P.3d 1173 (2006).

Substantial competent evidence is " 'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. . . . [S]ubstantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' [Citation omitted.]" *State v. Gray,* 270 Kan. 793, 796, 18 P.3d 962 (2001).

The State contends that the standard of review is unlimited because the ultimate determination is a legal question. See *State v. Longbine,* 257 Kan. 713, 717, 896 P.2d 367 (1995), disagreed with by *State v. Hicks,* 282 Kan. 599, 612, 147 P.3d 1076 (2006). Lemons did not provide a standard of review. Nevertheless, both of the previously mentioned standards lead to the same conclusion.

*Search and Seizure*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures, and a warrantless search is per se unreasonable unless it falls within one of the recognized exceptions. *State v. Ramirez,* 278 Kan. 402, 404-05, 100 P.3d 94 (2004). Consequently, a warrantless search of a house is per se unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Moreover, absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment to the United States Constitution. *Steagald v. United States,* 451 U.S. 204, 211, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981). Evidence recovered following an illegal entry of the home is inadmis-

sible and must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484-87, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Reno,* 260 Kan. 117, 129, 918 P.2d 1235 (1996); see also *Mapp v. Ohio,* 367 U.S. 643, 660, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961) (courts must follow the exclusionary rule).

Nevertheless, when officers have an arrest warrant and probable cause that defendant is in the house, officers are entitled to enter and look anywhere where defendant might be found. *Maryland v. Buie,* 494 U.S. 325, 332-33, 108 L. Ed. 2d 276, 110 S. Ct. 1093 (1990). Moreover, officers are entitled to take reasonable steps to ensure their safety while making an in-home arrest. 494 U.S. at 333-34.

The State contends that the protective sweep exception set forth in *Buie* should be applied in this case. A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie,* 494 U.S. at 327. The Fourth Amendment to the United States Constitution permits a protective sweep if the searching officer had reasonable belief, based on specific and articulable facts, that a dangerous individual was in the vicinity. 494 U.S. at 327, 337. Nevertheless, a protective sweep is not a full search of the premises and can only last as long as necessary to dispel reasonable suspicion of danger or as long as the time to make the arrest and leave the premises. 494 U.S. at 335-36. Without probable cause or reasonable suspicion, but incident to an arrest, officers can only look in places where people could be hiding. In order to search beyond such places, the officers must have articulable facts. 494 U.S. at 334. Our Supreme Court adopted this definition of protective sweep in *State v. Johnson,* 253 Kan. 356, 370, 856 P.2d 134 (1993). See also *State v. Luttig,* 30 Kan. App. 2d 1125, 1128, 54 P.3d 974, *rev. denied* 275 Kan. 967 (2002) (this court adopted the *Buie* definition in *Johnson*).

In *Johnson,* the defendant was arrested in his home; the officers then performed a sweep of the residence. The *Johnson* court determined that the officers had reasonable belief, based on specific facts, for a protective sweep because the officers knew there were

guns in the house; the officers had previously heard female voices in the house who were not accounted for; and the officers were concerned that someone could have entered the home from the rear. Nevertheless, the court held that the officers exceeded the scope and the length of the sweep by conducting the sweep at least twice and by looking inside a washing machine. 253 Kan. at 370.

In *Luttig*, the court held that the sweep was proper because the officer had reasonable belief that he was in danger, and the purposes of the sweep were officer safety and ascertaining the extent of the situation. 30 Kan. App. 2d at 1130. In that case, defendant's wife saw the defendant brandishing a shotgun in a suicidal manner and called the police. When police arrived, the defendant answered the door and the police immediately took him into custody; they then saw two weapons on the couch. The *Luttig* court held that there was no indication the officers conducted more than a cursory sweep. 30 Kan. App. 2d at 1129.

To counter Lemons' main contention that the protective sweep was done before his arrest, the State argues that the

"protective sweep exception should be expanded to allow pre-arrest warrantless searches if the officer has a reasonable belief, based on specific and articulable facts, that the area to be swept harbors someone posing a danger to those on the scene. The argument boils down to a defendant's expectation of privacy within their home versus officer safety."

The State contends that Tyner's experience in investigating methamphetamine laboratories gave rise to a reasonable concern that potentially dangerous people or animals might be in the home. The State further maintains that Tyner's decision to conduct a protective sweep was for officer safety, not to look for illicit substances.

Furthermore, the State asserts that Tyner articulated numerous facts justifying a protective sweep: that the officers were invited into Lemons' home; that Tyner's experience gave him knowledge that usually there were several potential dangers with methamphetamine laboratories; that Lemons did not immediately answer the door; that a radio or television was playing in the home; and that a bed sheet obscured Tyner's view of the remainder of the residence.

Nevertheless, a review of the facts clearly shows a different result. Lemons was arrested *after* Tyner performed the protective sweep and found the battery strip. Tyner testified that he asked Lemons whether other people were in the residence because his view of the rest of the residence was blocked by the sheet and because methamphetamine labs tended to involve possibly dangerous people or animals. Nonetheless, Tyner admitted that he was unable to articulate specific facts that something or someone dangerous was in the residence. He did not notice nor did he see anything to suggest criminal activity was afoot when the officers arrived at Lemons' residence. Moreover, Lemons was cooperative during the encounter. Additionally, Tyner did not have any specific information that other individuals, dangerous animals, or weapons were in the residence. There were no cars parked near Lemons' residence that were associated with the residence nor did Tyner know whether Lemons had a roommate or a dog. Tyner did not hear dogs bark or growl when the officers knocked on the door. Moreover, Tyler did not hear feet shuffling, voices, or people running inside the house. He did not see, hear, or smell anything that caused him concern for his safety, other than the sheet over the doorway. Nothing in the bedroom indicated methamphetamine was being manufactured. Tyner admitted that he and the other officers did not have to remain inside the house if they were concerned for their safety. He testified that the sole reason he and the other officers were in the house was because Lemons invited them inside. Substantial evidence exists that no in-home arrest was made before the sweep. Moreover, Tyner was unable to articulate specific information about any potential dangers existing inside the home.

Finally, the State also contends that the court must balance the rights of citizens against public and police safety. The State relies on *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983), and *State v. Mayfield*, 10 Kan. App. 2d 175, 694 P.2d 915 (1985). In *Deskins*, the court held that warrantless searches required balancing of legitimate governmental interests against the resulting intrusion on one's rights. 234 Kan. at 541.

In *Mayfield*, the officers followed defendant into his apartment but were not invited in. The court held that defendant was seized when the officers asked for his identification. The officers went into defendant's apartment out of concern for officer safety because defendant was hostile, belligerent, and unresponsive to questions.

The State contends that the protective sweep was proper because the officers were invited into Lemons' home and because he was being investigated for manufacturing methamphetamine. Accordingly, the State contends that the sweep was justified by officer safety concerns because methamphetamine labs usually involved dangerous animals or people with weapons.

Nonetheless, this court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). The *Buie* definition of protective sweep includes the language "incident to an arrest." 494 U.S. at 327. A protective sweep must be performed in conjunction with an in-home arrest because, by definition, officers can take reasonable steps to assure their safety while making an arrest and after an arrest. Yet, a protective sweep cannot last longer than the arrest itself. 494 U.S. at 334, 336-37. Our Supreme Court adopted this definition in *Johnson*, and there has been no indication that our Supreme Court is departing from this position. As a result, the trial court properly granted Lemons' suppression motion.

Affirmed.