Arnold-Burger, J.:
I respectfully dissent from the majority’s reversal of the district court’s finding that the State failed to establish probable cause to believe that Dustin Alex Evans acted unlawfully. I would affirm District Judge Ryan’s well-reasoned opinion dismissing the charges against Evans based on statutory immunity.
Although we know from State v. Ultreras, 296 Kan. 828, 845, 295 P.3d 1020 (2013), that the State has the burden of production on questions of immunity under K.S.A. 2014 Supp. 21-5231, and that the standard of proof is probable cause, the Supreme Court has declined to establish procedures for immunity hearings. Likewise, the statute itself provides no guidance. See K.S.A. 2014 Supp. 21-5231. So the appellate courts are left to determine the appropriate procedure to be used. Courts often make such determinations by seeking guidance from similar situations where procedures have been firmly established. The majority here and the panel in State v. Hardy, 51 Kan. App. 2d 296, 347 P.3d 222 (2015), rev. granted 304 Kan._(2016), found that the analogous situation *1055 was preliminary hearings, primarily because such hearings also use a probable cause standard. So the procedure for reviewing the evidence, they argue, should be the same. They reach the conclusion that, like a preliminary hearing, the district court must view the evidence in a statutory immunity hearing in the light most favorable to the State. 51 Kan. App. 2d at 304.1 disagree with such an approach in a case involving the legal question of whether immunity from prosecution exists and will attempt to explain my rationale later in this opinion. But even if the majority is correct regarding the applicable procedure, I also firmly believe that the district court was correct in concluding that the State failed to meet its burden of production under the facts of this case. So I will begin there after a review of some relevant facts.
Facts
I have no dispute with the facts as set out in the majority opinion but would like to further examine some of those facts. First, both Jose Luis Pena, Jr., and Evans agree that Evans’ air supply was cut off by Pena during the wrestling match, although they disagree as to the method by which this occurred. Evans claims it was by Pena repeatedly putting his hand over Evans’ mouth and moving his head, while Pena claims that during the process of moving Evans’ head around, his chest covered Evans’ face and Pena put his hand on Evans’ throat and “pushed off.” They both agree that Evans extricated himself from the match, ran into the garage, and accused Pena of purposefully trying to kill him. Although Pena claimed that he never entered the garage—instead being subjected to a surprise attack from Evans outside the garage—the undisputed blood evidence supported Evans’ claim that the stabbing took place in the back area of the garage next to the door going into the house, suggesting Evans was backed into a corner by Pena. Likewise, an uncontroverted expert report from an emergency room doctor and director of a wound care center opined that the stabbing took place at a time when Evans was in a defensive posture with both hands on the sword. Moreover, and contrary to his initial report to police in which he claimed that the first he saw the sword was when it stabbed him in the chest, Pena testified at the preliminary hearing *1056 that Evans brandished the sword three times: once causing injury and scarring to his forearm, once in a manner that was deflected by Pena, and finally when causing the damaging blow to the chest. However, the undisputed medical evidence concluded that there were no injuries on Pena’s arms. Finally, although both parties were intoxicated, Pena’s blood alcohol content was .20, almost 3 times the legal limit, perhaps influencing his recollection of events. Friends indicated that when Pena becomes intoxicated he gets very “handsey,” “touching people, patting them on their backs, trying to put them in headlocks, and stuff like that.”
In sum, although there may have been conflicting stories about what happened, the uncontroverted physical evidence clearly supported Evans’ version of the events and negated Pena’s version. Based on this evidence, the district court found that the State had failed to meet its burden of production to establish probable cause that Evans’ use of force under the circumstances was unlawful. In other words, there was insufficient evidence presented by the State, based on a probable cause standard, to establish that Evans lacked a reasonable belief that deadly force was necessary to prevent imminent death or great bodily harm to himself.
Viewing the Evidence in the Same Manner as Evidence ata Preliminary Hearing: the Light Most Favorable to the State
The majority finds that, based on this court’s reasoning in Hardy (the only case to date that has addressed the process necessary to resolve immunity claims), the district judge was required to view tire evidence in the light most favorable to die State and was not allowed to weigh the credibility of the evidence and witnesses. For the reasons I explain further below, I disagree widi this approach. But assuming for the sake of argument that the majority is correct, I believe the State has still failed to meet its burden of production.

The standard of proof is probable cause and our standard of review is de novo.

In Kansas, standards of proof are seen as a continuum beginning with some evidence to support a finding (any evidence in the rec *1057 ord to support a conclusion without examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence), followed by reasonable suspicion (a particularized and objective basis, more than a hunch, that a person is involved in criminal activity), then probable cause (evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused’s guilt), preponderance of the evidence (evidence that shows a fact is more probably true than not true), clear and convincing evidence (the truth of the facts presented is highly probable), and beyond a reasonable doubt (clearly defined by the words themselves). See City of Wichita v. Molitor, 301 Kan. 251, 257-58, 341 P.3d 1275 (2015) (reasonable suspicion); In re B.D.-Y., 286 Kan. 686, 691, 696, 187 P.3d 594 (2008) (clear and convincing evidence and preponderance of the evidence); State v. Wilson, 281 Kan. 277, 287, 130 P.3d 48 (2006) (reasonable doubt); Sammons v. Simmons, 267 Kan. 155, 158, 976 P.2d 505 (1999) (some evidence); State v. Bockert, 257 Kan. 488, 492, 893 P.2d 832 (1995) (probable cause). We know that the standard of proof in this case is probable cause. Ultreras, 296 Kan. 828, Syl. ¶ 1. So I will discuss that standard in a bit more detail.
As the very name implies, the probable cause standard deals with probabilities. Illinois v. Gates, 462 U.S. 213, 231-32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (probable-cause standard incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances). In order to establish probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused’s guilt. Bockert, 257 Kan. at 492. To put it in the context of this case, the State had the burden to prove that a reasonable person of ordinary prudence and caution could conscientiously entertain a reasonable belief that when Evans stabbed Pena, Evans did not have a reasonable belief that deadly force was necessary to prevent imminent death or great bodily harm to himself. See K.S.A. 2014 Supp. 21-5222(b).
*1058 As to our standard of review, because the case was submitted entirely on stipulated facts and resulted in a dismissal of charges, our review is unlimited. We are in no different position than the district court. See State v. Anderson, 270 Kan. 68, 71, 12 P.3d 883 (2000) (an appellate court’s review of an order discharging the defendant for lack of probable cause is de novo); State v. Phelps, 266 Kan. 185, 193, 967 P.2d 304 (1998) (appellate court conducts a de novo review of the evidence when considering the trial court’s preliminary hearing probable cause finding). Again, the majority here and in Hardy opined that when viewing the evidence, our role is the same as the district court: to view the evidence in the light most favorable to the State and, if there is any conflicting testimony, accept the version which is most favorable to the State. 51 Kan. App. 2d at 300.

What does it mean to view the evidence in the light most favorable to the State?

Viewing evidence in the light most favorable to the State does not mean completely disregarding all evidence that detracts from the State’s position. It also does not require the elimination of all factual disputes as a matter of law. Instead, the totality of the circumstances must be considered. A defendant has the right to be present and to introduce evidence on his or her own behalf. K.S.A. 2014 Supp. 22-2902(3); see State v. Jones, 290 Kan. 373, 379, 228 P.3d 394 (2010). These rights imply that the defendant has a right to present a defense at the preliminary hearing, and this right has little meaning if the judge is not allowed to consider the evidence presented.
To this end, our Supreme Court has repeatedly stated that at a preliminary hearing, the judge not only has a duty to pass judgment on the credibility and competency of a witness but may consider evidence of a defense. State v. Jones, 233 Kan. 170, 174, 660 P.2d 965 (1983); see also State v. Bell, 259 Kan. 131, 133, 910 P.2d 205 (1996) (when evaluating evidence presented at a preliminary hearing, the judge must seriously consider the defendant’s defense and pass judgment on the credibility and competency of both the State’s and the defendant’s witnesses). Even in Ultreras, the Su *1059 preme Court noted that “[e]vidence of justification . . . becomes a consideration in deciding whether the State has met that burden” to show that the defendant’s actions were unlawful. 296 Kan. at 844.
Certainly, “[t]he question of the credibility of a witness at a preliminary examination must be approached with caution.” State v. Wilson, 267 Kan. 530, 535, 986 P.2d 365 (1999). And generally, “[i]f there is a conflict in witness testimony that creates a question of fact for die juiy, the [judge] must accept the version of the testimony which is most favorable to the State.” Bell, 259 Kan. at 133. But if the doubts regarding a witness’ credibility are so strong that they “obviate the appearance that [the defendant] probably committed the [crime] with which he was charged,” discharge may be appropriate. State v. Chapman, 252 Kan. 606, 616, 847 P.2d 1247 (1993). Again, the issue is not whether there is “some” evidence to support the State’s position but whether reasonable minds could differ regarding the evidence.

Viewing the evidence in the light most favorable to the State, the State failed to meet its burden of production.

In this case, viewing only the evidence that supports the State’s position, the evidence is that Pena said he did not threaten to kill Evans, Pena said he never entered the garage to confront Evans, and Pena said he fended off two blows with the sword outside the garage before he was stabbed in the chest. But that does not mean we must disregard all other evidence. Clearly, there was some evidence that Evans was not threatened by Pena. But the standard of proof is not “some evidence” and, as already stated, it does not require that we only consider the State’s evidence. Instead, when we examine the totality of tire evidence, the undisputed evidence is that Pena somehow cut off Evans’ air supply during their wrestling match and that Evans told Pena that he believed Pena was trying to Mil him. Even after Evans forcefully expressed his concern to Pena, the physical evidence clearly supports a finding that Pena followed Evans into the garage and confronted him in the corner next to the door entering Evans’ home. Evans was in a defensive posture with both hands on the sword he instinctively grabbed *1060 from nearby. Pena received no injuries on his arm from repeated blows as he claimed. Moreover, Evans continued to tell one consistent stoiy of what happened, while Pena’s story varied in significant ways over the course of the investigation and preliminary hearing.
The doubts regarding Pena’s credibility are so strong they preclude the conclusion that Evans acted unlawfully. The physical evidence is such that reasonable minds could not differ on the unlikelihood of the incident happening in the manner described by Pena, and Pena’s testimony was the only evidence that supported the State’s theoiy. Based on the totality of the evidence, the State clearly failed to meet its burden, and the district court did not err in finding that “probable cause did not exist to conclude that Defendant’s use of force was unlawful.”
Viewing the Evidence in the Same Manner as a Motion to Suppress Evidence-. Considering and Weighing All Evidence With No Deference to Any Party -
As previously stated, because the statute and the Supreme Court have failed to provide guidance on the manner in which the district court is to consider the evidence of immunity, we are left to our own devices. The majority believes that the situation is analogous to a preliminary hearing. But there is merit to Evans’ position that such an approach renders the statute meaningless as tie State will always be able to present some evidence that the defendant failed to act justifiably, usually in the form of the victim’s statement. This is certainly one reason to question whether the current standard is the correct one. It is presumed that the legislature does not intend to adopt useless or meaningless legislation. See State v. Van Hoet, 277 Kan. 815, 826, 89 P.3d 606 (2004).
Moreover, the majority concedes that if tire district court was not required to view the conflicting evidence in a light favoring the State, there was sufficient evidence presented to the district court to support its finding that the State failed to establish probable cause that Evans’ use of force was unlawful. In other words, the defendant’s absolute immunity from prosecution in this case rests solely on whether the district court is allowed to weigh conflicting *1061 evidence. This is the second reason that it is important to determine whether the standard used by the majority is the correct one.

The difference between an affirmative defense and immunity

First, a general review of the difference between the affirmative defense of self-defense and immunity from prosecution will highlight why the immunity determination must be treated differently.
An affirmative defense rests on the premise that certain actions are justified or warranted by the circumstances. When a defendant asserts an affirmative defense, it is assumed that the facts in the charging document are true. But if the defendant is able to establish that the affirmative defense is also factually true, he or she should be found not guilty. See State v. McIver, 257 Kan. 420, 431, 902 P.2d 982 (1995). At trial, once the defendant satisfies his or her burden of production to establish that competent evidence exists which “could allow a rational fact finder to reasonably conclude that the defense applies,” the State has the burden to disprove the defense beyond a reasonable doubt. K.S.A. 2014 Supp. 21-5108(c). Examples of affirmative defenses include intoxication, compulsion, entrapment, involuntary intoxication, ignorance or mistake, and self-defense. K.S.A. 2014 Supp. 21-5205 (intoxication); K.S.A. 2014 Supp. 21-5206 (compulsion); K.S.A. 2014 Supp. 21-5207 (ignorance or mistake); K.S.A. 2014 Supp. 21-5208 (entrapment); K.S.A. 2014 Supp. 21-5222 (self-defense). But at the preliminary hearing stage, the State simply has the burden to establish probable cause that a crime has been committed and that the defendant committed it. Even though a defendant has a right to present a defense, the burden remains with the prosecution to establish that there is probable cause to believe a crime has been committed. As the court noted in Hardy, “[i]n at least some cases involving the use of force, the State could make an evidentiary showing of probable cause without addressing possible self-defense.” 51 Kan. App. 2d at 306.
But because the purpose of the preliminary hearing is not to establish guilt or innocence beyond a reasonable doubt, when evidence conflicts or raises any doubt, the case is allowed to proceed to jury trial for the ultimate determination. See Jones, 233 Kan. at *1062 173. “Evidence of justification simply becomes a consideration in deciding whether the State has met that burden”—to show that the defendant’s actions were unlawful. Ultreras, 296 Kan. at 844. Thus, the courts view the evidence in the light most favorable to the prosecution to encourage the submission of the case to the jury to sort out factual conflicts. This is the process the majority and the Hardy panel believe is appropriate for immunity hearings.
On the other hand, immunity, as defined by Black’s Law Dictionaiy 867 (10th ed. 2014), is “[a]ny exemption from a duty, liability, or service of process.” Recent legislation in Kansas and elsewhere, known as “stand your ground” legislation, has included grants of immunity to defendants who are justified in using force. Without probable cause to believe that unlawful force was used, arrest and prosecution is prohibited. K.S.A. 2014 Supp. 21-5231(b). Self-defense and immunity are clearly distinct concepts. If immunity were the same as self-defense, there would have been no need to adopt a specific immunity statute because K.S.A. 2014 Supp. 21-5222 would have sufficed. Perhaps most importantly, because K.S.A. 2014 Supp. 21-5231 grants immunity from arrest and prosecution rather than a mere defense to liability, “it is effectively lost if a case is erroneously permitted to go to trial.” Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).
In determining how the court should examine the evidence when presented with a claim for immunity, it may be helpful to also examine how a police officer is statutorily required to examine the evidence in such a case prior to making an arrest. Law enforcement has two decision points when the immunity statute is implicated. First, is there probable cause to believe the person used force against another? And second, is there probable cause to believe that the use of force was unlawful in light of a claim of self-defense? Under the stand your ground immunity statute, an “agency shall not arrest the person for using force unless it determines that there is probable cause for the arrest.” K.S.A. 2014 Supp. 21-5231(b). The law enforcement officer is directed to use standard investigation techniques to make this determination. K.S.A. 2014 Supp. 21-5231(b). There is no presumption that the *1063 force used was unlawful, and law enforcement is not required to view the evidence in the light most likely to result in charging the perpetrator. The officer is instead clearly required to consider and weigh all the evidence before deciding whether immunity exists.
Likewise, and before even filing charges, a prosecutor must consider two things: first, whether there is probable cause to believe a person used force against another; and second, whether there was probable cause to believe that the use of force was unlawful in light of the actor’s ability to assert “stand your ground” immunity under the statute. K.S.A. 2014 Supp. 21-5231(c). Again, there is no presumption that the force used was unlawful, and the prosecutor is not required to evaluate the evidence in the light most likely to result in charging the person. Instead, the prosecutor is clearly required to consider and weigh all the evidence in making a determination of whether the potential defendant used force without the requisite legal justification.
Although at first blush this would seem to be identical to the charging decision a prosecutor malees in every case, it is decidedly different. A prosecutor must rebut a claim of statutory immunity before the case can go to trial. This procedure differs from when a defendant raises an affirmative defense. As the court in Hardy noted, “[i]n at least some cases involving the use of force, the State could make an evidentiary showing of probable cause without addressing possible self-defense. A motion for self-defense immunity necessarily requires the State to deal directly with the issue. [Citation omitted.]” Hardy, 51 Kan. App. 2d at 306. In Ultreras, the Supreme Court noted that this two-step approach is what gives the statute meaning and makes it distinct from an affirmative defense.
“[0]nce a defendant raises justified use-of-force immunity before a court, a probable cause determination must also include a determination that the defendant’s use of force was not justified under K.S.A. 21-3211, K.S.A. 21-3212, or K.S.A. 21-3213. Hence, the statute as written with a probable cause standard adds an additional requirement and is meaningful.” (Emphasis added.) 296 Kan. at 844.
At least two other courts have recognized the distinction between an affirmative defense and immunity. “[I]mmunity represents a far greater right than any encompassed by an affirmative defense, which may be asserted during trial but cannot stop a trial *1064 altogether.” Bunn v. State, 284 Ga. 410, 413, 667 S.E.2d 605 (2008); see also State v. Duncan, 392 S.C. 404, 410, 709 S.E.2d 662 (2011) (“by using the words ‘immune from criminal prosecution,’ the legislature intended to create a true immunity, and not simply an affirmative defense”).
In State v. Farmer, 259 Kan. 157, 161, 909 P.2d 1154 (1996), our Supreme Court opined:
“The function of a judge or magistrate at a preliminary hearing is not to determine the wisdom of the prosecuting attorney’s decision to file and pursue charges against the defendant. Nor is it the function of the judge to conclude that there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent.”
But I submit that is exactly the function of the judge when determining the existence of statutory immunity. The Hardy panel and the majority express concern that by weighing the credibility of witnesses “a district court would otherwise usurp” the role of the jury. 51 Kan. App. 2d at 301. But that is exactly what a determination of immunity is supposed to do—avoid a trial altogether.

Immunity should he determined by a neutral judge weighing conflicting evidence and making clear findings of fact, subject to appellate review.

The statute clearly authorizes the immunity determination to be made by law enforcement officers, prosecutors, and judges. If law enforcement officers and prosecutors are allowed to consider and weigh all the evidence in making their determination, short-circuiting the criminal case at any point along the way, why not judges? Rather than viewing the immunity hearing as similar to a preliminary hearing, the purpose of the statute—immunity from prosecution—would be fully realized if that hearing was conducted in the same manner as a one for a motion to suppress.
On a motion to suppress evidence, the State must prove the lawfulness of the search and seizure, albeit by a preponderance of the evidence rather than probable cause. See State v. Porting, 281 Kan. 320, 324, 130 P.3d 1173 (2006). The judge receives evidence on any issue of fact necessaiy to determine the motion. K.S.A. 22-3216(2). Where the material facts are not in dispute, the ultimate *1065 determination of suppression is a question of law over which this court has unlimited review. State v. Ramirez, 278 Kan. 402, 404, 100 P.3d 94 (2004). However, when material facts are in dispute, the district court makes factual findings and credibility determinations, and the appellate court does not reweigh those determinations on appeal. State v. Lemons, 37 Kan. App. 2d 641, 644-45, 155 P.3d 732 (2007). Instead, the district court’s factual findings on a motion to suppress are reviewed for substantial competent evidence, but the legal conclusions to be drawn from the evidence are reviewed de novo. State v. Estrada-Vital, 302 Kan. 549, 555, 356 P.3d 1058 (2015). And the appellate courts generally give great deference to the factual findings of the trial court. State v. Vandiver, 257 Kan. 53, 58, 891 P.2d 350 (1995). This should be our standard of review in die case of an immunity determination.
Just as in the case of a motion to suppress, a decision on immunity may result in die case never reaching the jury. But as previously indicated, if the case is erroneously permitted to go to trial, the statutory right to immunity is lost. See Mitchell, 472 U.S. at 526. To be consistent with the rights set forth in the statute, the judge must be able to consider and weigh the evidence as a whole, with no deference to the prosecution’s position. At least one state with a similar statute has concluded that the question of whether the defendant is immune from prosecution must be determined by the trial court, before trial, as a matter of law. See Fair v. State, 284 Ga. 165, 166, 664 S.E.2d 227 (2008) (citing with approval Boggs v. State, 261 Ga. App. 104, 106, 581 S.E.2d 722 [2003]); see also People v. Hartwick, 498 Mich. 192, 201, 870 N.W. 2d 37 (2015) (immunity from prosecution is a question of law with the court necessarily resolving factual disputes).
In this case, District Judge Ryan clearly set forth detailed findings after examining all the evidence presented to him. As the majority concedes, his decision was supported by substantial competent evidence, and his conclusion that the State had failed to meet its burden of proof was legally correct.
Accordingly, I would affirm the district court’s dismissal of the charges in this case.